THE STATE OF MONTANA, EX REL. THE GREAT FALLS WATER WORKS, APPELLANT, *v.* THE MAYOR AND CITY COUNCIL OF THE CITY OF GREAT FALLS, AND THE CITY OF GREAT FALLS, RE-SPONDENTS.

[Submitted May 3, 1897. Decided May 17, 1897.]

*Municipal Corporations—Powers—Debts—Loans of Credit— Constitutional Limitation — Contracts — Validity — Acceptance— Waiver— Estoppel—Taxes—Mandamus— When Lies —Records—Pleading— Water Companies—License.*

Compiled Statutes 1887, section 345, forbidding a mayor to be interested directly or indirectly in the profits of any city contract entered into while he is in office, does not ap-

ply to a mayor who was not interested in a contract made with the city, but who agreed, after the contract was accepted and filed with the proper official, to take stock in a corporation succeeding to the rights of the original contractors.

Where contractors with a city for a water supply did not file their acceptance within the time prescribed by the ordinance, but the city, without objecting, allowed them to erect the works and supply water for several years according to contract, it waived any defect in acceptance.

A city granted an exclusive right to supply water for a term of 15 years, at fixed hydrant rates. The grantees erected waterworks, issued and sold bonds, and supplied the city with water according to contract for 7 years, when the city repudiated that part of the contract fixing rates, and insisted on a continued supply at lower rates. *Held*, on mandamus by the grantees to compel the levy of a tax to pay contract rates overdue, that the city could not be heard to say that the contract was void because the grant was exclusive, or for an unreasonable length of time at fixed rates, or unwise on the part of the city.

Laws 1889, page 185, section 16, amending Compiled Statutes, section 415, so as to provide that the amount of taxes to be levied in any one year in any city or town for water purposes shall not exceed one-half of 1 per centum, etc., became part of an ordinance contract for a water supply, made and accepted while it was in force, so that the contractors had a right to insist that, so far as necessary to pay rentals due them according to contract, a special tax should be levied annually, not to exceed the specified limit.

In view of laws 1889, page 185, section 16, amending Compiled Statutes section 415, so as to provide that the amount of taxes to be levied by a municipality for water purposes shall not exceed a certain per cent., etc., and thereby making liabilities of municipal corporations for water rentals under contracts with water companies payable out of a special fund, such liabilities are not debts, within the constitutional limitation.

An agreement of a city in a contract with a water company to pay to the company's bondholders the money due or to become due from hydrant rentals, or as much as necessary to pay interest on the bonds, and the signing on behalf of the city of a certificate to that effect on the back of the bonds, is not a loan of credit by the city, in violation of act of congress 1886, section 2 (Compiled Statutes of Montana, page 32.)

Code of Civil Procedure 1895, section 1961, provides that mandamus may issue to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station; and section 1962 provides that the writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. *Held*, that mandamus was the proper remedy to compel a city to levy a special tax to pay ascertained water rentals due under a valid contract for a water supply, which contract the city had repudiated.

The city could not dispute its records as to the number of hydrants for which rentals were due under the contract, in the absence of an averment in the return laying a foundation therefor.

In the absence of an averment in the return to support its admission, evidence that the water company had no license to carry on its business was also properly excluded.

Where a city repudiates a contract with a water company providing for payment of hydrant rentals semiannually, but still uses the water furnished by the company, and insists that the supply be continued regardless of the contract, a command in a writ of mandamus, that the city levy sufficient taxes to pay, not only the six months' water rentals already due, but also those that will become due for the remaining six months of the year, is proper.

*Appeal from District Court, Cascade County.    Dudley Du Bose, Judge.*

MANDAMUS by the state, on the relation of the Great Falls Waterworks, against the mayor and city council of the city of Great Falls, and the city of Great Falls. A peremptory writ

issued, and from an order granting a new trial relator appeals. Reversed.

. Statement of the case by the justice delivering the opinion.

On March 26 and 27, 1889, while Montana was a territory, Ordinance No. 17 of the city of Great Falls was passed and approved. It embodied the terms of a contract between said city and one T. E. Collins and others for the construction of a waterworks system. It granted to said parties and their associates and assigns the exclusive right of laying pipes and mains in the said city, and of supplying water by means thereof to it and to its inhabitants for a period of 20 years. It gave the city the option of purchasing the waterworks plant at any time after the expiration of 15 years, and before the termination of 20 years; and, in the event that no purchase thereof should be made by the city, it provided that the contract should be renewed for an additional period of 20 years. It designated a certain point in the Missouri river from which water should be taken. It required the laying and maintenance of 7 miles of mains, with 75 hydrants at the outset, and extensions of mains and pipes in such streets as the city council might direct from time to time, with an additional hydrant for each one-tenth of a mile of extended mains. The city reserved the right to govern by ordinance the general use of all hydrants, and the right of such reasonable control thereof as might be necessary to a beneficial use of the water for fire and sewerage purposes. It provided that, upon a failure of the parties contracted with and their assigns to repair any hydrants within 24 hours after notice of the necessity of repairs, the city could proceed to do so, and might deduct the cost thereof from the next water rental to be paid by the city. It was agreed that the city should pay for the first 75 hydrants at the rate of $90 per annum for each, and for each hydrant ordered and placed thereafter at the rate of $60 per annum. Payments were to be made semiannually, on May 1st and November 1st. It contained this language:

"A sufficient tax shall be levied and collected annually upon

all taxable property upon the assessment roll of said city sub-ject by law to such tax, to meet the payments under this or-dinance when and as they respectively mature, during the existence of any contract for hydrant rental, which tax shall be irrepealable from and after the passage of this ordinance.''

Section 27 of the ordinance provided that, if Collins and his associates and assigns should issue any bonds secured by mortgage or trust deeds on the waterworks, the money due or to become due for any hydrant rental, or as much thereof as might be necessary, should be appropriated to the payment of the interest on said bonds, and authorized the mayor and city clerk to sign a certificate on the back of any such bonds to that effect. The ordinance also provided for the filing of a written acceptance of the terms of the contract by said Col-lins et al. within 10 days after its approval.

Collins and his associates, after a compliance with the terms of the ordinance, so far as was requisite, organized a corpora-tion known as the ''Great Falls Water Company,'' on March 27, 1889, and assigned to it all their rights and franchises. One of the stockholders in this corporation was Paris Gibson, the mayor of the city at the time the ordinance was passed. The city was formally notified and acquiesced in this transfer. The Great Falls Water Company put in a water plant pursuant to the contract. The city accepted it, and paid the rentals agreed upon as they fell due.

On or about May 1, 1891, the corporation issued and dis-posed of bonds to the extent of $150,000, securing the same by a trust deed on all its property. These bonds were duly indorsed by the city officials pursuant to section 27 of the ordinance *supra*, and the money realized from the sale thereof was expended upon and in connection with the water plant. The company operated the waterworks until the 1st day of May, 1893, when it transferred all its franchises and property to the Great Falls Waterworks, a corporation organized for the purpose of operating the waterworks. Again the city coun-cil was notified, and duly accepted this corporation as the assignee and successor in interest of the Great Falls Water

Company.   On May 1st the new corporation issued bonds payable in 20 years, to the extent of $500,000, securing the same by a trust deed executed to the Illinois Trust & Savings Bank, a corporation.   Again, the city officials, pursuant to section 27 of the ordinance *supra*, duly indorsed these bonds. Of this last issue of bonds, $150,000 were used for the purpose of retiring the bonds issued by the Great Falls Water Company.   Another $150,000 worth of these bonds was also disposed of.

Prior to November 1, 1895 (as shown by the minutes of the city council), under the direction and acceptance of the city council, the water mains had been extended to such an extent that there were 251 hydrants in the city.   On May 1, 1896, the city council duly allowed and paid the presented claim of the Great Falls Waterworks for the six months' rental of 251 hydrants, at the rates prescribed in the ordinance contract, namely, $90 each for the first 75 hydrants, and $60 each for the remaining 176.   On May 13th the council duly enacted an ordinance as required by the laws of the state, in which, among the other sums to meet the current expenses of the city, there was appropriated the sum of $17,390 for water and fire purposes.   In August, 1896, at the time prescribed by law for the levying of its taxes, the city, through its council, levied a two-mill tax only for water purposes.   On or about October 2, 1896, the water company presented to the city an itemized bill for the rental of the 251 hydrants which would be due for the six months ending November 1, 1896. At a meeting of the council held on October 5, 1896, the bill was considered and acted upon.   Its auditing committee, to whom it was referred, presented the following report upon the claim:

"We find the following to be the facts:   The assessed value of the city property, taken the current year, is $5,541,103. The limit of indebtedness, as allowed under the present law, is three per cent. of that amount, or $166,233.   According to your books, the outstanding indebtedness amounts to approximately $200,000, a sum in excess of the limit set by

law.   Accordingly, the council will be limited in its annual expenditure to the amount of cash on hand, plus the amount received from annual receipts from taxes and licenses.   Applying this principle to the claim on hand, we find cash in the treasury, available for water fund purposes, $540.92; taxes not yet collected, but approximately correct and probable, $11,082.20—total to be expended during the year ending May 1, 1897, for water purposes, $11,623.12.   We, your committee, acting upon this information, and believing that the council has no right to expend money which it does not possess, or has no reasonable expectation of possessing, do recommend that the above-named sum be divided into two equal parts, the first half to be paid upon the present bill, and the remainder to be paid on the first day of May, 1897.   The conditions of payment are embodied in the resolution herewith presented:

" *Resolved*, that the claim of the Great Falls Waterworks for six months' hydrant rental, ending Oct. 31st, 1896, be disallowed in the sum of $2,245.47, and allowed in the sum of $5,811.56, and that a warrant be issued on the city treasurer, payable out of the water fund, for said $5,811.56, and be tendered to said Great Falls Waterworks, as payment in full for said six months' hydrant rental."

The said report of the auditing committee and the resolution contained therein were adopted by the city council.   Subsequently, on November 2, 1896, the water company having again presented its bill for hydrant rentals due for the six months' period ending November 1st, the council took identically the same action it had taken upon the same bill at the prior meeting; its auditing committee having reiterated its previous report thereon, and having recommended the identical resolution in reference thereto previously adopted.

On November 4, 1896, the Great Falls Waterworks, on affidavit of its president, applied to the district court of Cascade county for a writ of mandamus to be directed to the city council of Great Falls.   An alternative writ of mandamus was issued, which recited many of the facts heretofore stated,

and also contained other allegations. The writ commanded the city council at its first regular meeting to audit and allow the claim of relator for the rental of 251 hydrants from May 1, 1896, to November 1, 1896, at the rate specified in said Ordinance No. 17, and directed that the mayor thereupon should issue a warrant to said relator for the sum of $8,655 and interest, payable out of the water fund only. It also commanded that the city council should levy and collect sufficient taxes to pay for the rental of said 251 hydrants for what was due thereon, and what would be due for the fiscal year commencing the first Monday in May, 1897, and ending the first Monday in May, 1898. The writ required cause to be shown on November 16, 1896, why its commands should not be obeyed. No demurrer was interposed.

The return or answer of defendants to this alternative writ admitted that water mains, original and extended, had been laid in the city by relator and its predecessors under the orders and directions of the city council to the extent alleged. It denied that the amount of money had been expended which the writ alleged had been expended in and about relator's water plant, and averred that a much less amount of money than was expended would have sufficed for the construction and expenses connected with said plant. It alleged that the stock in the Great Falls Waterworks Company had not been paid in full by the holders thereof. It denied the allegation of said writ that the amount of money which would be received by the relator on account of water furnished private consumers for the year 1896 would be insufficient to meet and discharge the interest on the outstanding bonded indebtedness of the relator and its operating expenses. Defendants further denied that there had been placed, in connection with the water plant and system, 251 hydrants prior to the 1st day of November, 1895; denied that any such number of hydrants had been accepted or since maintained by the relator; and alleged that the total number of hydrants placed upon or in connection with said water system on or prior to the 1st day of November, 1895, was 250 hydrants. The answer further

averred that 3 of said 250 hydrants were placed and had been maintained wholly outside of the limits of the city of Great Falls without authority. It alleged that, of the remaining 247 hydrants, 6 were placed in an addition to the city of Great Falls, under an express agreement with the city that no charge should be made for the same prior to the 1st day of May, 1897. It also alleged that, of the 241 remaining hydrants, 13 had been placed below the surface of the ground, so as to be inaccessible for fire purposes. It averred that prior to May 1, 1896, relator had been ordered to place said 13 hydrants in proper condition, but had failed and refused to do so. It averred that in the spring of 1896, for a period of 60 days, relator had failed to furnish, to the inhabitants of the city, water fit and suitable for domestic use, and had made no provision at periods of high water in the Missouri river for furnishing private consumers with wholesome water.

It alleged that, at the time the contract was entered into, the future of the city was most promising (setting forth in detail the reasons therefor), and that at such time the city could have entered into a more favorable contract than the one contained in Ordinance No. 17. It set forth that the city of Great Falls had exceeded the limit of indebtedness permitted by the constitution of the state, and had no authority to levy and collect the taxes for water rentals as prescribed by Ordinance No. 17. It alleged that an agreement had been entered into by the persons named as grantees in the ordinance and Paris Gibson, at that time mayor of the city, whereby each of said persons, including said mayor, should be an equal owner of the franchises, privileges, and contract rights to be granted, and should organize a corporation to which should be transferred all the said rights, etc. It alleged that Collins et al. and the mayor, Gibson, influenced the city council to pass the ordinance aforesaid, and that the same was approved by its mayor, Gibson while an interested party. It averred that the various members of the city council who had allowed and paid the hydrant rentals to relator and its predecessors had done so without any knowledge on their part of the said

agreement on the part of Gibson, and of his interest in the original water contract. It alleged that, by reason of the facts aforesaid, as well as upon other grounds, the said original water contract was void.

It averred inability on the part of the city to allow relator the amount claimed for hydrant rentals, and at the same time operate its city government, setting forth in detail the expenses necessary for the operation of its government. It denied the allegation that the only reason for disallowing the claim presented by relator was the fact that the city had not sufficient money in the water fund to pay the full amount of hydrant rentals prescribed by the ordinance, and alleged that, in allowing a portion of said claim and disallowing a portion thereof, the council had acted in good faith, in the belief that the amount allowed for water furnished was a full and adequate compensation for the same, and was all that the relator was legally entitled to receive. It further alleged that under the terms of the bonds issued and secured by trust deed to the Illinois Trust & Savings Bank, a corporation of Illinois, it (the city) was required to pay to said last-named corporation any sums due for hydrant rentals to the relator on the interest account of said bonds, and averred that interest due thereon in excess of what relator claimed to be due from the city had not been paid by relator. It further alleged that there was a defect of parties plaintiff to the action, in that the Illinois Trust & Savings Bank was a necessary party to the action.

The cause came on for trial on the 7th day of December, 1896. The district court (Judge Benton presiding), on December 21, 1896, found in favor of relator, both as to the law and facts, on all issues on which evidence was admitted, and ordered a peremptory writ of mandamus as prayed.

Subsequently, the defendants moved to set aside the findings of the court, and for a new trial, upon the following ground: "Errors of law occurring at the trial, and excepted to by the defendants at the time." The motion was made on a bill of exceptions. It appears from the bill of exceptions that, upon the trial of the suit, the defendants objected to the

introduction of any evidence in support of the alternative writ of mandamus.

First, because of a defect of parties.

Second, because no cause of action was stated for a writ of mandamus.

Third, because the relator had a plain, speedy and adequate remedy at law, by suit against the city.

Fourth, because it appeared on the face of the writ that the claim of relator had been already audited and disallowed.

Fifth, because it did not appear on the face thereof that the claim sued on for water rent had ever been presented to the council for allowance, in accordance with the provisions of section 4808 of the Political Code 1895, requiring that ''no money must be paid to any person claiming under a contract with the council, until such person has first filed with the clerk a statement under oath, disclosing the names of all persons directly or indirectly interested in the contract, or the proceeds or profits thereof, and declaring that no persons other than those named are interested in the same.''

Sixth, because, the business of relator being a business that cannot be lawfully conducted except under a license first issued therefor, the alternative writ is insufficient in not alleging that the relator, at the time of the furnishing of the water, was or is now entitled to conduct the business of furnishing water to the city, or to any one else, because it does not appear that the relator had been licensed to conduct the business of a water company either under the city ordinances or the statutes.

Seventh, because, upon the facts stated in the alternative writ, it appears that Ordinance No. 17 is void, because to give it effect would be to create a monopoly and an exclusive right and privilege.

Eighth, because it further appears from the allegations of said writ that Ordinance No. 17, in so far as it purports to confer the right upon the grantees therein named, their successors and assigns, to compensation for the period named for hydrant rental at the rates fixed, is and was *ultra vires*, and beyond any express or implied power on the part of the city council to enact it.

Defendants also moved to dismiss the alternative writ upon the ground ''that the record now shows that there is a controversy between the Great Falls Waterworks and the city of Great Falls, over the question of the amount of money due for water furnished, and concerning other facts essential for the council to determine when acting as an auditing body in allowing and disallowing the claim.''

These objections and this motion were denied by the court. An objection of defendants was overruled, and an exception saved to the admission in evidence of the minutes of the council, for the purpose of showing that the city council had accepted 251 hydrants.

At the trial, the defendants offered to show by the records of the minutes of the city council that at a meeting held on April 12, 1889, the acceptance in evidence was brought up for consideration, and that, on motion, the acceptance was received and placed on file. An objection to this evidence as immaterial was sustained. Defendants then offered to amend their answer so as to allege that the grantees did not file their acceptance provided for in said ordinance until the 12th day of April, 1889. Leave to amend was denied.

As shown by the bill of exceptions on which defendants moved to set aside the findings of fact and for a new trial, the only issue upon which the district court allowed defendants to introduce evidence at the trial was that as to the participation of Mayor Gibson in the procurement of the water contract from the city while an interested party. It also appears that the defendants attempted, on cross-examination, to show that relator had no license, city or county, to carry on its business. The answer contained no allegation as to whether relator had a license or not. An objection, being interposed, that the evidence sought to be introduced in respect to a license was not proper cross-examination, was sustained.

The motion for a new trial was heard by Judge Du Bose, who, after taking the matter under advisement, on February 19, 1897, granted a new trial. The reasons assigned therefor in his written opinion were in substance that mandamus was

not the proper remedy to be invoked by relator, inasmuch as it had a plain, speedy and adequate remedy at law, and that the city council, in disallowing the claim, acted within the scope of its authority. The appeal is from the order made by Judge Du Bose granting the new trial.

*John B. Clayberg, B. P. Carpenter, W. W. Phelps, I. Parker Veazey* and *W. T. Pigott,* for Appellant.

*Sam Stephenson* and *Cullen, Day & Cullen,* for Appellees.

BUCK, J.—Winnowing the grain of this controversy,—distinguishing the substance from the shadows of law invoked,— the vital issues are less numerous than the many questions elaborately discussed in brief and argument seem to indicate.

It is apparent from the record that, in the refusal of the city council of Great Falls to allow relator's claim for hydrant rentals, the actual motive was to repudiate the water contract, because it had grown burdensome, through changed financial conditions. It is also manifest that the district court which granted the motion for a new trial acted solely on the theory that relator's remedy for its alleged wrong was not mandamus. While it is true as a general proposition that a correct decision or ruling will not be disturbed on appeal, even if the reason announced for the same is erroneous, nevertheless an appellate court is under no compulsion to grope in speculation for a possibly good reason. Therefore, in the determination of an appeal, a reason explicitly given for its ruling or decision by an inferior tribunal is always entitled to more consideration than mere possibly good reasons subsequently conceived or urged. If a false reason is given, the sound one supporting it should be clearly apparent and readily supplied. Were it otherwise, ingenuity in mere idle argument would result, and doubt would be encouraged for the sake of mere doubt. Hence we propose to deal very briefly with many of the objections raised.

Was the water contract void for fraud in its inception? The judge who tried the case found that Paris Gibson, the

mayor of the city of Great Falls, at the time Ordinance No. 17 was passed and approved, was not interested in the water contract, and there was evidence to support the finding. The fact that Gibson, while mayor of the city, had agreed (after the acceptance of the contract filed with the proper city official, on April 9, 1889) to take shares of stock in the corporation succeeding to the rights of the original parties contracted with, did not render this contract void, under sections 345 and 347 of the Compiled Statutes 1887, forbidding a mayor or alderman to be a party to any city contract, or to be interested in the profits of any such contract entered into while he was in office. Now, whether the city of Great Falls might be affected by any breach of trust on the part of its mayor in connection with such a contract, or any violation of law declared by statute to be a breach of trust, it is unnecessary to discuss. The allegations in the answer as to Gibson's connection with the passage and approval of the ordinance are indefinite in character. It is averred that Ordinance No. 17 was caused to be passed by Collins et al. and Gibson, and that, through their united influence, the city was induced to enact the same. It is not averred that Gibson as mayor voted for the ordinance. Under the statutes in force at the time, he would not, as mayor, have had a vote in the proceedings of the council, unless there had been a tie.

The defendants offered to prove by the minutes of the city council that the acceptance of the ordinance (which was admitted by the answer to have been filed within time, but which, upon the trial, was shown to have been filed two days later than the time prescribed by the ordinance) was not considered by the city council until April 12th, at which meeting the acceptance was received and placed on file. Objection was made on the ground of immateriality and sustained. The defendants then offered to amend the answer by alleging that the grantees in the ordinance did not accept its provisions until the 12th day of April, 1889. The court refused to allow this amendment. It is true that the city might at the time have objected that the acceptance had not been filed within the

10 days prescribed, but it did not do so.    It allowed the construction of the waterworks in accordance with the terms of the ordinance, and proceeded to use and enjoy the water furnished thereby.    For a number of years the ordinance was treated as valid and binding in every respect.    There was no suggestion in connection with the evidence offered that Gibson had or could lawfully have voted as to the acceptance at the meeting held on April 12th.    Under these circumstances, there was a waiver of any defect so far as the acceptance was concerned.

Was the contract void because it granted an exclusive right or fixed the hydrant rates for an unreasonable length of time ?

It is to be borne in mind that there is no one in this proceeding claiming under any right conflicting with the relator's to supply the city of Great Falls and its inhabitants with water.    The attitude of the city is simply this :    It desires and contemplates a continuance of the use of the water supplied by relator, but insists upon such use upon its own terms, regardless of the original contract.    The situation is entirely different from what it would be were the exclusive or unreasonable feature of the franchise being attacked prior to the performance of the terms of the contract.    Contracts establishing fixed rates of payment, or granting exclusive rights for a long term of years to supply the needs of cities, should be always closely scrutinized by the courts when directly attacked, before substantial rights have vested through performance. It is true, the question for what length of time a city council may lawfully enter into such contracts depends largely for its answer upon the facts and conditions involved in each particular case.    Respondents contend that, for the last-mentioned reason, the trial court should have allowed them to show the promising future of the city at the time the contract was entered into, and the probability that a much more favorable water contract could have been obtained.    But what if it had been shown the city officials acted unwisely as to the terms of the contract ?    Rights have vested through the performance of many of said terms.    No fraud is alleged, or even

suggested, on the part of the members of the city council, other than the mayor, in entering into this contract. From March 27, 1889, up to August, 1896, for a period of more than seven years, no objection was raised (so far as the record discloses) in any manner to this contract. Bonds had been issued on the water company's plant, and money realized from the sale of bonds expended thereon. There was no error in the exclusion of this evidence.

Respondents urge : ''Counsel for appellant seem to contend that we cannot now raise the defense of unreasonableness of contract. If this were a proceeding for the payment of past hydrant rentals alone, there would be some force in the proposition. But this is more. This proceeding is brought to obtain, and the trial court granted, a mandamus to compel not only an allowance of the claim for past-due rentals, but also to compel the levy of a tax and an appropriation of sufficient money to pay rentals maturing for the year ending May 1, 1898. If this is to be upheld, it is only on the theory that the contract is valid for the entire period of time covered by its terms.''

The city in this proceeding is not seeking to use water to be supplied by other means than the relator's plant. It neither contemplates or suggests the supply of water to it by other means; and no rival in the water business seeking the patronage of the city, attacks this contract under a right or privilege antagonistic to it.

The city virtually accepts the results of this contract in part —so far as they are beneficial to it—even while protesting that it is void *ab initio*. In *Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac. 249, it was held that an ordinance of the city of Helena was void because it granted the exclusive right to supply said city with water for fire and sewerage purposes at fixed rates for a period of 20 years. The court granted a perpetual injunction at the prayer of certain taxpayers, to prevent the carrying out of the terms of the ordinance. But this was done before any work had been commenced under the contract embodied in the ordinance. For special reasons in

that case, it was not determined whether the Helena ordinance was severable in respect to what was valid and what invalid in its provisions. We do not deem it necessary to decide, under the existing condition of facts presented by this appeal and the law applicable thereto, whether the exclusive 15-year privilege granted in Ordinance No. 17 is void or not, either on the ground of monopoly or unreasonableness of time in prescribing fixed hydrant rentals. The city is estopped in its individual capacity by its present attitude from availing itself of this defense.

Nor is it necessary to determine any question which may arise in the future as to whether the relator can insist upon a renewal of the ordinance contract at the expiration of the 20 years prescribed therein, if the city of Great Falls does not purchase this water plant. We must decide the controversy only on the phase of it as presented at this time.

The law as announced in the case of *Illinois Trust & Savings Bank* v. *City of Arkansas*, City, 76 Fed. 271, 22 C. C. A. 171, is peculiarly applicable in many respects to the present case. We quote from it the following applicable language:

"Moreover, the city is in no position in this case to insist upon the invalidity of the exclusive character of this grant, if that could avoid its entire contract. The city is not endeavoring to construct waterworks or to lay pipes in its streets in violation of its exclusive grant to the gas company, nor is any one attempting to do so under its license or by its permission. No one seeks to infringe this exclusive grant. In practical effect it stands unchallenged, and may ever continue to be so. Until it is challenged by the act or endeavor of some one who seeks to infringe it, its validity or invalidity is a moot question, on account of which the courts ought not to, and will not, avoid any part of the contract. No one who does not infringe or threaten to infringe the exclusiveness of the grant in a contract made by a municipality can, after the substantial performance of the contract by the grantee, be heard to say that the contract or grant is void on account of the exclusive

character of the latter. [Authorities cited.] But it is insisted that this contract is beyond the powers of this city, and void, because it grants the right to use the streets of the city to the water company, and promises to pay rental for the hydrants, for twenty-one years. The proposition on which this contention rests is that the members of the city council are trustees for the public; that they exercise legislative powers; and that they can make no grant and conclude no contract which will bind the city beyond the terms of their offices, because such action would circumscribe the legislative powers of their successors, and deprive them of the right to their unrestricted exercise as the exigencies of the times might demand. There are two reasons why this proposition cannot be successfully maintained in this case: First, it ignores the settled distinction between the governmental or public and the proprietary or business powers of a municipality, and erroneously seeks to apply to the exercise of the latter a rule which is only applicable to the exercise of the former. A city has two classes of powers: The one legislative, public, governmental, in the exercise of which it is a sovereignty, and governs its people; the other, proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class, it is governed by the rule here invoked. In their exercise, it is ruling its people, and is bound to transmit its powers of government to its successive sets of officers unimpaired. But, in the exercise of the powers of the latter class, it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants; and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation. [Authorities cited.] In contracting for waterworks to supply itself and its inhabitants with water, the city is not exercising its governmental or legislative powers, but its business or proprietary powers.

The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city itself and its denizens. Second. The powers granted to this city by the legislature of the state of Kansas to contract for and procure waterworks are plenary and unlimited, save by the duty to exercise them with reasonable discretion; and it is not the province of a court to contract or clip the legislative grant.''

We are satisfied that these reasons apply generally to this appeal.

The case of *Davenport* v. *Kleinschmidt*, *supra*, refers to the distinction between the character of a city considered in its individual and its governmental capacity. See page 534, 6 Mont., and page 256, 13 Pac. The court expressly refused to hold the Helena ordinance void, because it restricted the future legislative powers of the city council.

Appellant says, in its brief:

''In the case of *Davenport* v. *Kleinschmidt*, 6 Mont. 502, 13 Pac. 249, the court distinguishes the cases of *Burlington Water Co.* v. *Woodward*, 49 Iowa, 59, and *Grant* v. *City of Davenport*, 36 Iowa, 401, and uses the following language: 'In all of the water cases arising in the state of Iowa, we are met with a general statute which authorized all cities to contract for the erection of waterworks, and to pay for the water used by special fund, raised by a special annual tax, not to exceed five mills on the dollar; and such contracts with water companies were held not to create a debt against the cities, because the water companies would never have any general claim against the cities, but were held to look to the special fund alone for the satisfaction of their demands.' After the decision in this case, and in the year 1889, the legislative assembly of the territory of Montana passed the act hereinbefore quoted, conferring upon cities the power to levy and collect a tax not to exceed five mills on the dollar for fire and water purposes.''

The act of the legislature referred to (See Sess. Laws 1889, p. 185, § 16), is as follows:

''That section four hundred and fifteen, as amended by 'An

act to amend an act relating to the formation of municipal corporations,' be amended so as to read as follows:    'Section 415.    The amount of corporation taxes to be assessed and levied in any one year on the taxable property of any city or town for general municipal or administrative purposes shall not exceed three-fourths of one per centum, and for fire and water purposes one-half of one per centum on the assessed valuation of such property and such special assessments as may be levied from time to time as provided for under chapter twenty-two, Fifth Division of Compiled Statutes of Montana, and the amendments thereto.' "

This law was in force when Ordinance No. 17 was passed, approved, and accepted.    We are of the opinion that this law became a part of the contract embodied in said ordinance, and that relator had a right to insist that, in so far as might be necessary to pay what was due it for hydrant rentals in accordance with rates prescribed in the ordinance contract, a special tax, as provided for in that act, should be levied annually; of course, in only such sums as would be needed, and not exceeding the five mill limit.    The contract was entered into in contemplation of a special fund being created by the city to meet liabilities incurred thereunder; and the legislature, in said act, contemplated at the time that cities of the territory should pay for water used by them for sewerage and fire purposes from taxes levied and collected for that specific purpose.    The case of *Davenport* v. *Kleinschmidt*, supra, does not disapprove the Iowa cases holding that, because a general law provided for payment from a special fund, a liability incurred by a city to supply its inhabitants with water was not a debt, in the sense of the term as employed in the constitution of Iowa, forbidding cities to incur debts in excess of a certain proportion to their assessable property.    It was under different conditons of law and fact that the supreme court of the territory of Montana held in *Davenport* v. *Kleinschmidt* that the liability incurred by the city of Helena under its ordinance contract was a debt. This appears from a careful reading of the case.

Respondents urge:    "The provisions of section 27, con-

taining the agreement of the city to pay the hydrant rentals to the bondholders, and requiring a certificate of such agreement on the back of each of the bonds, is an attempt to loan to the company the credit of the city, in violation of Act Congress 1886, § 2 (Comp. St. Mont., at page 32)." This section referred to is as follows: "That no territory of the United States now or hereafter to be organized, or any political or municipal corporation or subdivision of any such territory, shall hereafter make any subscription to the capital stock of any incorporated company, or company or association having corporate powers, or in any manner loan its credit to or use it for the benefit of any such company or association or borrow any money for the use of any such company or association."

We hold that the act of congress was not violated by section 27 of the ordinance, and the action of the city thereunder as to its certificate on the bonds.

It follows, in this view of the case, that neither under the organic act of the territory of Montana, nor the constitution of the state of Montana, is or was the liability incurred by the city of Great Falls under Ordinance 17 a debt in the sense prohibited. After rights had vested under the act of the legislative assembly passed in 1889, *supra*, neither the legislature nor the people of Montana, by adopting a constitution, could have impaired the contract obligation attaching. The constitution of the United States forbids this. See *Wolf* v. *New Orleans*, 103 U. S. 358, and *Von Hoffman* v. *City of Quincy*, 4 Wall. 535.

Does the alternative writ contain allegations showing a cause of action which would entitle relator to a writ of mandamus? Yes.

Did relator have any plain, speedy, and adequate remedy in the ordinary course of law? It did not. Mandamus was clearly the remedy. Mandamus, even in the common-law view of it, long ago ceased to be a prerogative writ, and became gradually, both in the English and American courts, to be regarded and interpreted as a writ of right. Since the breaking down by the codes of so many of the formal bar-

riers between equity and law, the remedy by mandamus, however different its legal history from the writ of injunction, is none the less elastic and adaptable within its proper sphere, as the latter is within its sphere. The function of each is by summary legal intervention to prevent wrongdoing. The one sets the law in motion to compel the doing of what should be d..ne; the other prevents or checks threatened or actual wrongdoing. Each serves the ends of justice practically. Each is a developed remedy, adapted to the modern needs and ideas; and, when the proper occasion demands either, the writ should be issued readily, without regard to any mere lifeless distinctions of past history.

Sections 1961 and 1962 (relating to mandamus), Code Civil Procedure Montana, 1895, are as follows:

"Sec. 1961. It may be issued by the supreme court or the district court, or any judge of the district court, to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person.

"Sec. 1962. The writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It must be issued upon affidavit, on the application of the party beneficially interested."

Under said section 1961, the issuance of the writ does not depend upon the exercise of a mere discretion on the part of the court or judge, regardless of the question of whether there exists a plain, speedy, and adequate remedy in the ordinary course of law. The discretion should be exercised in connection with the answer to that question. But, under section 1962, if there is not a plain, speedy, and adequate remedy in the ordinary course of law, then there is no discretion. The court or judge must issue the writ.

Had the city of Great Falls anything before it to be de-

termined or decided when relator's claim for hydrant rentals was acted upon, on October 5 and November 2, 1896?    No.

The question of the number of hydrants had been decided months previously, and payment had been made for 251 hydrants up to May 1, 1896.    The answer itself concedes that the mains to an extent requiring 251 hydrants had been laid under the direction of the city government.    The city's own records establish the fact, and the trial court found, that 251 hydrants had been placed and accepted along these mains. The evidence offered to prove that three of these hydrants were outside of the city limits, and that six others were in an addition to the city, and maintained under a special agreement, and that 13 others were below the surface of the ground, and therefore inaccessible for fire and sewerage purposes, was all properly excluded.    There was no averment in the answer laying any foundation for evidence to contradict the city's own records kept presumably in accordance with the law requiring them to be kept.

If the city is dissatisfied by reason of defects in any hydrants, it certainly, under the terms of its contract, can remedy the same.    So far as the three hydrants outside of the city limits are concerned, they may be so near the city limits as to be necessary at those points for the protection of the city.

The evidence offered to show that relator had no city or county license was also properly excluded on the trial.    There was no allegation in the answer to support its admission, and it was improperly sought to be elicited on cross-examination.

The offer to show that impure and unwholesome water had been furnished the inhabitants of the city was wholly immaterial.    The point from which the water was to be taken by the relator had been expressly agreed upon in the ordinance, and there was no issue as to the quality of the water furnished.

The objection that there was a defect of parties, averred in the answer, and sought to be maintained on the trial, came too late.    No advantage was taken of any defect by demurrer, as the Code of Civil Procedure provides it shall be taken.    To

prevent any possible injustice to the city in this respect, however, proper provision can be made in the writ which we shall direct to be issued. Relator was clearly beneficially interested in the enforcement of the ordinance.

The objection that the alternative writ fails to contain any allegation in compliance with section 4808 Political Code Montana, requiring an affidavit reciting certain facts as to the interests of the parties in the claim presented, is without merit.

The conclusion is unavoidable that the sole and only reason prompting the city council to reject the claim of relator on October 5 and November 2, 1896, was to repudiate the contract; and the other possible reasons suggested to uphold its action are without merit. We cite *Wood* v. *Strother*, 76 Cal. 545, 18 Pac. 766, in this connection; also *People* v. *Supervisors of Otsego Co.*, 51 N. Y. 401.

As to the question of whether or not the city was properly commanded to levy sufficient taxes for the year ending May 1, 1898, our view is as follows: The city had announced that it repudiated the water contract, but still clung to the use of the water furnished by the relator's plant. Under these circumstances, the command was a proper one. It is clear to us that relator, under all these conditions we have set forth, had no plain, had no speedy, and had no adequate, remedy in the ordinary course of law. The judge who granted the new trial should not have done so, and the same must be set aside.

The cause is remanded, with directions to the lower court to grant a peremptory writ of mandamus as prayed, but to direct therein that any warrant drawn on the water fund of the city be delivered into court, to be held there, and not turned over to relator, until the written consent of the Illinois Trust & Savings Bank has been obtained.

PEMBERTON, C. J., and HUNT, J., concur.