LUKERT, RESPONDENT, *v.* ELDRIDGE, APPELLANT.

(No. 3,363.)

(Submitted March 20, 1914. Decided March 30, 1914.)

[139 Pac. 999.]

*Vendor and Purchaser—Real Property—Fraud—Misrepresentations—Cross-examination—Litigious Character of Party—Instructions.*

Appeal and Error—Cross-examination—Litigious Character of Party—Harmless Error.
  1. Error in putting questions to defendant on cross-examination in an action to recover a balance due on the purchase price of land and personal property, alleged by him to have been prejudicial because an attempt to exploit his litigious character before the jury, *held* harmless, his answers not having been such as to show that he possessed the character indicated.

Same—Examination of Witnesses—Proper and Improper.
  2. Though the mere asking of questions may constitute error, the fact that a question, otherwise pertinent and proper, may tend to

prejudice a witness before the jury, furnishes no ground for its exclusion.

Same—Litigious Character of Party—Cross-examination—When Proper.

3. The litigious character of a party (or a witness) is not, generally speaking, a proper subject of inquiry; where, however, defendant, a man of wide business experience who had opportunity to and did examine land before purchasing, claimed in an action to recover a balance due on the purchase price that he had relied implicitly upon false statements made by plaintiff, a total stranger to him, and been overreached, questions on cross-examination seeking to elicit the fact that he had had many lawsuits were allowable.

Vendor and Purchaser—Real Property—Misrepresentations—Reliance upon.

4. An instruction which in effect told the jury that if defendant did not rely upon alleged misrepresentations made by plaintiff with respect to the character and quantity of land bought from him by the former but acted upon his own investigation, he could not recover upon his counterclaim based upon such misrepresentations, *held* not open to criticism.

Same—Opinions—Misrepresentations—Reliance upon.

5. Under an instruction that when a seller states his opinion as to the quality or quantity of land he is endeavoring to sell, and such statement is made merely as his opinion and not as a statement of fact which he knows to be true, the buyer cannot rely thereon but must exercise his own judgment, and in view of defendant's testimony that he knew plaintiff was only giving him his opinion on the subject, a verdict in favor of plaintiff was proper.

[As to liability of vendor for false representations innocently made, see note in Ann Cas. 1913C, 63.]

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by Roy J. Lukert against George C. Eldridge. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

*Mr. E. L. Bishop* and *Mr. I. W. Church,* for Appellant, submitted a brief, as well as one in reply to that of Respondent, and argued the cause orally.

The evidence as to the litigious character of defendant admitted over objection was irrelevant and impertinent to any issue in the case, and was incompetent for the purpose of impeaching or discrediting defendant, and inadmissible for any purpose, both on general principles and under the special provisions of the Montana statute. (*Palmeri* v. *Manhattan Ry. Co.,* 133 N. Y. 261, 28 Am. St. Rep. 632, 16 L. R. A. 136, 30 N. E. 1001; *Taylor* v. *McFatter* (Tex. Civ.), 109 S. W. 397;

*Cecil* v. *Henderson,* 119 N. C. 422, 25 S. E. 1018.) The rule as to the cross-examination and impeachment of witnesses is established by the Revised Codes of Montana; and the same rules apply to parties as to other witnesses. (*Borden* v. *Lynch,* 34 Mont. 503, 87 Pac. 609; *State* v. *Crow,* 39 Mont. 174, 102 Pac. 579; *People* v. *Harlan,* 133 Cal. 16, 65 Pac. 10.) The error was prejudicial. (*People* v. *Un Dong,* 106 Cal. 88, 39 Pac. 12; *People* v. *Wong Ah Leong,* 99 Cal. 442, 34 Pac. 105; *Sharon* v. *Sharon,* 79 Cal. 633, 22 Pac. 26, 131.)

The rule of law as laid down in the fourth and eighth instructions, to the effect that defendant had a right to rely upon positive statements of plaintiff as to the quantity of land under irrigation without investigation, and to recover if the purchase was induced by false representations, the falsity of which were not known or apparent and obvious to him, is amply sustained by the authorities. (See *Post* v. *Liberty,* 45 Mont. 1, 121 Pac. 475; *Eichelberger* v. *Mills Land etc. Co.,* 9 Cal. App. 628, 100 Pac. 117; *Wooddy* v. *Benton Water Co.,* 54 Wash. 124, 132 Am. St. Rep. 1102, 102 Pac. 1055; *Judd* v. *Walker,* 114 Mo. App. 128, 89 S. W. 558; *McGhee* v. *Bell,* 170 Mo. 121, 59 L. R. A. 761, 70 S. W. 493.)

*Messrs. Cooper & Stephenson* and *Mr. R. M. Armour,* for Respondent, submitted a brief; *Mr. Sam R. Stephenson* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought by plaintiff to recover $1,195, the balance of the purchase price of certain real and personal property sold by plaintiff to the defendant. The answer admits the purchases, the failure to pay the amounts demanded, and pleads two counterclaims: one for $162.50, the value of a certain horse—a part of the personal property sold by plaintiff—title to which failed, including also costs and expenses incurred in connection therewith, and the other for $2,500, damages claimed

to have been suffered by defendant by reason of misrepresentations, alleged to have been made by the plaintiff as to the amount of the land sold by plaintiff to defendant which was susceptible of irrigation, the character of a particular piece of the land lying across Sun river from the rest, and the location of a proposed line of railway across the. ranch. Issues were joined by reply, and a trial of the cause resulted in a verdict in favor of plaintiff for the amount claimed, less $157.50, allowed to defendant upon his first counterclaim. The defendant has appealed from the judgment and from an order denying him a new trial. There are but two assignments of error and but two questions presented for decision.

1. The defendant testified that plaintiff represented that 400 acres of the land could be irrigated, and that the land across Sun river was the best piece of land on the ranch; that he relied upon these statements and was deceived, as only 250 acres could be irrigated at most, and the land across Sun River was rocky, gravelly, and almost worthless. Upon cross-examination he was interrogated with reference to his relationship to plaintiff and to the land, and the reason which prompted him to rely upon plaintiff's statements, if he did so. A part of his cross-[1]    examination, which exhibits the first alleged error, follows:

"I am seventy-one years old and have been in business ever since I was old enough to be in business; I never thought a lawsuit was liable to grow out of this transaction.

"Q. You have had a good many lawsuits?

"A. Yes, a few.

"Q. Four or five since you have been in Montana?

"Mr. Bishop: That is objected to as incompetent.

"The Court: Overrule the objection. (To this ruling counsel for defendant then and there excepts.)

"A. Not that I know of.

"Q. How many lawsuits did you have in Oklahoma?

"Mr. Bishop: We object to that as immaterial, not proper cross-examination, and incompetent.

"The Court: Overrule the objection. (To this ruling of the court, defendant then and there duly excepted.)

"A. I have never had a suit I could get out of, unless I gave up everything I had," *etc.*

It is insisted that the attempt to exploit before the jury defendant's litigious character constituted prejudicial error. So far as the answers of the witness are concerned, no prejudice could have resulted. They were not responsive to the questions, and do not indicate that defendant maintained the character which it is insisted the questions were designated to [2] portray; we recognize, however, that prejudice may result merely from asking questions. Sections 8030 and 8031, Revised Codes, are designed to protect a witness from improper and irrelevant questions and questions intended merely to degrade him, but if a particular question is pertinent and otherwise proper, the fact that it may tend to prejudice the witness before the jury furnishes no ground for its exclusion.

From defendant's own testimony it was disclosed that at the [3] time he purchased the property in question from the plaintiff he had but recently come to Montana from Oklahoma; that plaintiff and the agent with whom he negotiated were strangers to him; that he had gone upon the land and made some examinations for himself; had the means of irrigation pointed out to him, could observe the quantity of land under the ditches, and had an opportunity to examine the character of all the land, but did not make much of an examination on his own account. His only excuse for not doing so was that he relied implicitly upon plaintiff's representations and was overreached. Ordinarily, when fraud is alleged and the party relying upon it says, "I believed the statement and was deceived," there is no possible means of contradicting him by direct evidence. His statement must go unchallenged, or a liberal rule of cross-examination must be allowed. "The power of cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests, which the law has devised for the discovery of truth. By means of it the situation of the

witness with respect to the parties and to the subject of litigation, his interest, his motives, his inclination and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers of discernment, memory, and description, are all fully investigated and ascertained, and submitted to the consideration of the jury, before whom he has testified, and who have thus had an opportunity of observing his demeanor, and of determining the just weight and value of his testimony. It is not easy for a witness, who is subjected to this test, to impose on a court or jury; for however artful the fabrication of falsehood may be, it cannot embrace all the circumstances to which a cross-examination may be extended.'' (1 Greenleaf on Evidence, 16th ed., sec. 446.)

The rule of cross-examination in vogue in this state was announced in *Kipp* v. *Silverman,* 25 Mont. 296, 64 Pac. 884, and has been repeated so often since that a reference to some of the cases suffices here. (*Hefferlin* v. *Karlman,* 30 Mont. 348, 76 Pac. 757; *State* v. *Howard,* 30 Mont. 518, 77 Pac. 50; *State* v. *Biggs,* 45 Mont. 400, 123 Pac. 410; *Knuckey* v. *Butte Electric Ry. Co.,* 45 Mont. 106, 122 Pac. 280; *Moss* v. *Goodhart,* 47 Mont. 257, 131 Pac. 1071.)

In the present instance no one could say that defendant had not relied upon the statements which he claims the plaintiff made to him, but whether he did or not was an important inquiry, and, to determine the truth or falsity of his testimony, the relative situations of the parties at the time of the transaction apparently afforded the best means for ascertaining the probability or improbability of defendant's story. (6 Ency. of Evidence 42; *City of Tacoma* v. *Tacoma L. & Water Co.,* 17 Wash. 458, 50 Pac. 55.) If it should have been made to appear that defendant was inexperienced in the ways of the business world; that he was unsophisticated, provincial, could not read or write, or bore such intimate relationship to plaintiff as to warrant implicit confidence, the trial court might have accepted his story without question, but if, on the other hand, it was

made to appear that plaintiff and defendant were strangers dealing at arm's length; that defendant was a man of education who had traveled much, had enjoyed many years of successful business experience, had been involved in tranactions which led to litigation; that he had the opportunity to examine this property for himself—it would be asking a great deal of the trial court to find that defendant had been deceived only because he had relied with confidence upon the statements of a stranger with reference to matters open before him for investigation. The course of this cross-examination tended to indicate the probability or improbability of defendant's contention, and was, under the circumstances of this particular case, allowable. We are not to be understood that the litigious character of a party or a witness is generally a proper subject for a jury; on the contrary, it is not generally a proper subject of inquiry. Our holding is limited to the particular case presented.

2. Complaint is made of instruction No. 9, given by the court, [4] as follows: ''On behalf of the plaintiff it is denied that any false representations were made to the defendant with respect to the quantity of land under the ditch, as well as the character of land across the river, and that the defendant himself, and by his agent, investigated said land and the conditions surrounding the same for himself, and was advised of all the facts himself before he bought said land. If you find from the evidence that the defendant, individually, or through his agent, if he had one, undertook to and did investigate the said land to his satisfaction, and examined the same before making said purchase, in that event the defendant would not be entitled to recover anything on account of the alleged shortgage of the land under said ditch, or the character of land across the river referred to in the pleadings.''

It is said that defendant's right to recover thus depended upon whether he made an investigation of the land for himself before purchasing, and that this instruction was in effect a direction against him, since the word ''investigate'' means to make inquiry, and it is conceded that defendant did inquire

of plaintiff concerning the land; but this is scarcely a fair statement of the proposition. The word "investigate" means: "To follow up step by step by patient inquiry or observation; to trace or track mentally; to search into; to inquire and examine into with care and accuracy; to find out by careful inquisition." (Webster's International Dictionary.) By other instructions the court directed the jury to find for defendant if the evidence disclosed that plaintiff made representations with respect to these matters which were untrue, but which were believed by defendant and relied upon by him to his injury. In effect, instruction No. 9 presents the alternative, that if the jury found that defendant did not rely upon statements made by plaintiff, but did rely upon his own investigation, he could not recover upon his second counterclaim so far as it relates to the quantity of land under the ditch and the character of the land across Sun river. The form of the instruction is not open to the criticism leveled at it. In *Grinrod* v. *Anglo-American Bond Co.*, 34 Mont. 169, 85 Pac. 891, we said: "When it appears that a party who claims to have been deceived to his prejudice, has investigated for himself, or that the means were at hand to ascertain the truth or falsity of any representations made to him, his reliance upon such representations, however false they may have been, affords no ground of complaint." It seems impossible that the jury could have been misled.

By instruction No. 11 the court, without objection, directed [5] the jury as follows: "You are instructed that when one person states to another his opinion as to the value, character, quality, or quantity of land which he is endeavoring to sell, and such statement is made merely as a statement of his opinion, and not as a statement of a fact that he knows to be true, then the person to whom such opinion is stated has no right to rely thereon, but must exercise his own judgment." On cross-examination defendant testified: "He [Lukert] showed me where the line ran, and said what was below the ditch was under the ditch and what was above the ditch wasn't under the ditch. He said there was about 400 acres under the ditch. He didn't

say he had measured it; he said that was the understanding when he bought the place. He didn't represent to me that he had made any measurements to find out how much was under the ditch. I understood that he was just giving me his opinion, that is, his estimate, of how much was under the ditch. I don't know anything about whether the land across Sun river was under the ditch." In the light of instruction No. 11 and this evidence, a verdict in favor of defendant upon the second counterclaim, based upon any alleged misrepresentation respecting the amount of land susceptible of irrigation, could not stand, and this eliminates altogether the principal question presented by this specification, for it appears from the evidence that the amount of land across Sun river was deemed to be so small as not to influence the defendant to any considerable extent in making the purchase.

Upon the whole case made, no reversible error appears, and the judgment and order are therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.