TIERNEY ET AL., APPELLANT, v. CITY OF BILLINGS, RESPONDENT.

No. 8593

Submitted January 24, 1947. Decided February 27, 1947.

As amended on Denial of Rehearing May 6, 1947.

179 Pac. (2d) 993

Messrs. Rockwood Brown, Horace S. Davis, and Franklin Longan, all of Billings, and Mr. Clarence Hanley, of Helena, for appellants.

Mr. R. C. Dillavou, of Billings, for Respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the Court.

Plaintiffs, a co-partnership, entered into a written contract with the city of Billings for the collection and disposal of the city's garbage for the years 1937, 1938 and 1939. This action was brought to recover on that contract.

The parts of the contract material here are those providing for the compensation to be paid plaintiffs. They were to receive as compensation for the work the following sums:

"For the first year of said contract, the lump sum of Nineteen Thousand, Three Hundred Twenty-four Dollars $19,324.00.

"For the second year of said contract, the lump sum of Nineteen Thousand, Three Hundred Eighteen Dollars ($19,318.00).

"For the third year of said contract, the lump sum of Sixteen Thousand Nine Hundred Dollars $16,900.00 *Dollars;* the compensation after said first year to be increased or diminished as the names appearing on the garbage assessment list for each succeeding year increase or decrease from the number of said names on the 1936 garbage assessment list, which list is taken as a basis as set forth in paragraphs 8 and 56 of the specifications; said compensation after the first year to be computed by taking the ratio between the bid price per year and the number of names appearing on the garbage assessment list for the 1936 and applying the same to the number of names appearing on said garbage assessment list for each subsequent year."

Paragraphs 8 and 56 of the specifications provide: "8. * * * To take care of the variation in population by growth or shrinkage or the annexation or deduction of territory from the city during the life of the contract, the Contractor agrees that the obligations herefor, shall be adjusted by taking the ratio between the annual bid price and the number of bona fide names appearing on the garbage assessment for the year 1936 and applying the same to the number of bona fide names appearing on the garbage assessment for the years 1937 and 1938; and the payment for each subsequent year after the first year shall be adjusted on each anniversary of the contract by raising or lowering the anual bid price in direct proportion to the increase or decrease in the number of names on the assessment list as follows: The 1938 price shall be increased or decreased according to the increase or decrease in the number of names on the assessment list for 1937 as compared to the assessment list of 1936; and the 1939 price shall be increased or decreased according to the number of names on the 1938 assessment list compared with the number of names on the 1936 assessment list. * * *

"56. The number of names on the Garbage Assessment List of the City of Billings for the year 1936 and subsequent years shall be taken as the measure of the increased or decreased yearly compensation to be paid for the collection and disposal of garbage for subsequent years under this contract, the list of 1937 being the measure for the second year, that of 1938 for the third year. The ratio shall be computed on the number of bona fide names appearing in the list of 1936 as a base."

No question is raised by plaintiffs as to the compensation received for the first year of the contract. The dispute arises over the proper compensation for the second and third years. The record discloses that plaintiffs were paid $20,541.88 for the second year's services and $20,092.44 for the third year of the contract. The complaint alleges that the defendant still owes plaintiffs the sum of $12,514.78 for the second year and

$21,176.52 for the third year. The complaint seeks recovery of those amounts.

The plaintiffs in computing the amount alleged to be due accept the 1936 assessment list as containing 3,619 names. This was the number of names which plaintiffs contend was represented to them by the city engineer as the number of names on the assessment list for 1936. This was the information furnished to plaintiffs and other bidders before they made the bid for the work in question. Plaintiffs then contend that the amount alleged to be due for the subsequent years arises by reason of the increase in the number of names on the garbage assessment list in the last two years of the contract over and above the number of names appearing on the 1936 assessment list. Reduced to its last analysis the controversy hinges upon the proper method of determining the increase in the number of names appearing on the assessment list in the last two years of the contract over and above the number appearing on the 1936 list.

Plaintiffs point out that the contract contains this paragraph: ''Bidders are notified to examine thoroughly these instructions, the proposal and form of contract, and the plans and specifications. If there be any doubt or obscurity as to the meaning of the same, intending bidders shall ask the City Engineer in writing for an explanation, before submitting their proposal; and no explanation shall be binding upon the city unless the same be requested and answered in writing and filed with the City Council.''

Acting pursuant to that clause in the contract, plaintiffs requested the information from the city engineer regarding the number of names on the 1936 assessment list. In response to that request plaintiffs were advised in writing that there were 3,619 names on the 1936 assessment list and they contend they had the right to rely upon that figure. They offered proof that they did rely upon it in making their bid. They do not now contend that the representation was erroneous but assert their right to rely upon it as the starting point from which to de-

termine the increase or decrease in subsequent years on which to found their claim for altering the compensation fixed for subsequent years. They count upon cases of which Hollerbach v. United States, 233 U. S. 165, 34 S. Ct. 553, 58 L. Ed. 898, is typical. That and kindred cases relied upon do not deal with the precise question before us here. In those cases there were representations regarding the conditions to be encountered in the proposed work whereas here the representation related to a factual situation to be used as a measuring stick on which to gauge the increase or decrease in the amount of work in the years 1938 and 1939 as compared with that of 1937.

Plaintiffs rely upon sections 279 and 280 of Ordinance No. 1177 reading:

"Section 279. It shall be the duty of the City Clerk each year immediately after the passage of the resolution fixing the basic garbage taxes for the year, to extend on the list of lots liable for the tax, the total amount to be taxed against each lot or portion of a lot under the provisions of this article. The City Council shall thereupon pass provisionally a resolution levying and assessing garbage taxes in accordance with said extensions. Said resolution shall give the number and description of each lot to be assessed, the total amount of such assessment, and name of the owner if known, * * *."

"Section 280. * * * Thereafter the City Clerk shall incorporate such changes in the list of taxes as extended by him, and thereafter shall certify the taxes on such amended list to the County Treasurer, to be by him collected in the same manner as other special taxes and assessments."

In effect, plaintiffs contend that in determining the number of names on the assessment list for 1937 and 1938 the name of the owner shall be counted once for each lot owned by him even thoguh the assessment list may in fact give but one name with two or more lots. The record shows that if that method is used then plaintiffs are entitled to the amount claimed in their complaint.

The defendant, on the other hand, contends that the 1936 as-

sessment list simply gives the name of the owner of the lot or lots involved in each stop for garbage collection and that if one person owned two or more lots on which there would be but one garbage pick-up, his name would appear but once for the several lots and would not be counted separately for each lot; that likewise the same method was used for each of the succeeding years; that there were in fact 7,696 lots assessed in 1936, 8,202 in 1937 and 8,856 in 1938, though there were but 3,619 names in 1936, 3,869 in 1937 and 3,851 in 1938, and in consequence plaintiffs have already been paid everything to which they are entitled under the contract. Relying upon the case of State ex rel. Great Falls Waterworks v. City of Great Falls Council, 19 Mont. 518, 49 Pac. 15, plaintiffs contend that the city ordinances above referred to became a part of the contract and that thereunder a proper assessment should give the name of each lot owner.

Section 48 of the Instructions to Bidders, which by the terms of the contract were made a part thereof, provides: ''Bidders are warned to carefully examine these specifications, and to thoroughly familiarize themselves with all ordinances and laws to which reference is hereby made, and which are a part of this contract, that pertains to the collection, removal and disposal of garbage * * *.'' The only ordinance to which reference is specifically made in the Instructions to Bidders was ordinance number 1238. It was referred to several times and has to do with the letting of contracts for the collection, removal and disposal of garbage. Sections 279 or 280 of ordinance number 1177 were not specifically referred to in the Instructions to Bidders. Those sections do not pertain to the collection, removal and disposal of garbage but to the method of levying and collecting garbage assessments. But even if sections 279 and 280 of ordinance number 1177 are to be taken as a part of the contract they do not aid plaintiffs here. There is nothing in those sections of the ordinance that conflicts with the other provisions of the contract as executed by the parties. If they affected the second and third years of the contract, then by

the same reasoning they would control the first year also and plaintiffs' right of recovery could not be sustained. In other words, if the contract for the first year should be considered as providing service for 7,696 lots and the second year 6,202 lots as claimed by plaintiffs or 8,202 lots as claimed by defendant and the third year as 8,856 lots, still we must find that plaintiffs have been paid in full for the extra service.

The validity of the garbage assessments or the fact that they were not made in conformity with the ordinances if such be the fact, is of no moment here.

The plaintiffs were experienced garbage collectors. Before entering into the contract they made an investigation of the territory involved and the number of stops to be taken into account. They could have counted the names on the 1936 assessment list and in fact their witness and agent Mr. Kinney testified as follows:

"Q. As a matter of fact, you were not very much interested in number of names that appeared on the assessment list? A. What I was interested in was the location of the cans and the availability of them.

"Q. That was the extent of your interests? A. Yes. I work on the trucks. I have had knowledge of what I can lift. * * *

"Q. Now then, apparently in your rambling around and investigation you made, you investigated more from the standpoint of the duties you were to perform? A. Yes.

"Q. You were not interested in anything else, except very incidentally? A. That is all.

"Q. That included the number of names on the assessment list? A. Yes sir, the number of names, and stops.

"Q. The number of names that appeared on the garbage assessment list wasn't a part of your function? A. No. I checked the dumps and dump-sites. * * *

"Q. Now, in the light of the experience you have had in these other Cities, don't you know that the names appearing on the garbage assessment is what the contract provided should

be the basis for the bid? A. Yes, sure, that is what we got the names for. * * *

"Q. Didn't you know these assessment lists were required by law to be filed in the offices of the City Treasurer and Engineer? A. As I said before—(Question read) A. Sure.

"Q. You made no inquiry in these offices about these records? A. No.

"Q. These are a matter of public record? A. I took Mr. Hurdle's word.

"Q. They were open to inspection by you? A. Yes."

The contract contains these provisions:

"The undersigned hereby certify as follows: That we have personally and carefully examined the plans, specifications, form of contract and the foregoing instructions for the work to be done in Garbage Collection and Disposal in the City of Billings under Ordinance No. 1238;

"That we have made examination of the points of origin and places of disposal of the garbage to be collected, and fully understand the character of the work to be done and the manner in which payment is to be made;

"That having made the necessary examinations, the undersigned hereby proposes to furnish all materials, vehicles, plant, equipment, dump sites, and facilities, and to perform all labor which may be required to do said work within the time fixed and upon the terms and conditions provided in the said plans, specifications, contract and the instructions, at the following price, to-wit: * * *

"Bidders must make their own examination, investigation and research regarding the proper method of doing the work, and all conditions affecting the work to be done and labor and material needed thereon and the quantity of the work to be performed, and the contractor agrees that he has satisfied himself by his own investigation and research regarding all of such conditions, and that his conclusion to enter into the proposed contract is based upon such investigation and research and not on any other information; and that he will make no claim

against the city because of any of the estimates, statements or interpretations made by any officer or agent of the city may prove to be in any respect erroneous, except as otherwise herein provided.''

Plaintiffs are estopped from contending that they did not ▓ make the necessary examinations and investigations regarding the amount of work involved and from contending that they did not discover that which was readily ascertainable from a proper investigation. Grindrod v. Anglo-American Bond Co. 34 Mont. 169, 85 Pac. 891; T. C. Power & Bro. v. Turner, 37 Mont. 521, 97 Pac. 950; Luckert v. Eldridge, 49 Mont. 46, 130 Pac. 999; Como Orchard Land Co. v. Markham, 54 Mont. 438, 171 Pac. 274; Lee v. Stockmen's Nat. Bank, 63 Mont. 262, 207 Pac. 623.

The contract, considered within its four corners, was intended merely to permit the plaintiffs to receive additional compensation for the additional labor involved in the last two years of the contract over and above the labor involved during the first year. The extent of the labor involved depended upon the number of customers served. The reference to the names appearing upon the assessment list was the practical method of ascertaining the increase or decrease in the amount of labor involved each year.

Here there is no controversy regarding the first year's compensation. Concededly for that year though there were only 3,619 names appearing on the assessment list there were in fact 7,696 lots involved in the garbage assessment for that year. To be sure, there were increases in the number of names and number of lots in subsequent years as above noted. But plaintiffs have already been compensated for the increased labor involved if the same method of determining the number of names upon the assessment list is pursued for each of the three years involved. Plaintiffs, however, wish to abide by the number of names appearing on the 1936 assessment list as given by the city engineer in computing the 1936 base rate but they wish for subsequent years to change the method of computing

the number of names on the assessment list by counting lots instead of names. The fallacy in this contention becomes apparent when it is remembered that the obvious intention of the parties to the contract was to arrive at a method by which due allowance might be made for increased or decreased work occasioned by growth or decline in the population of the city. If the contention of plaintiffs would be upheld, then even though there was no growth in the population of the city and even though the amount of work for garbage removal for the years 1938 and 1939 remained exactly the same as for the year 1937, and the assessment for garbage was exactly the same as in 1936, still the contract price for the years 1938 and 1939 should be multiplied twofold or more over that of 1937 because there were more than twice as many lots (7,696) as there were names (3,619) on the assessment roll.

Defendants point out that plaintiffs, though now demanding what amounts to approximately $3,439 per month for the year 1939, entered into a contract with the city on January 30, 1940, and after they had full knowledge of the work involved and when they were chargeable with knowledge of the method of levying the garbage assessments, for the removal of the city's garbage for the sum of $1,950 per month and actually operated for three months in 1940 on that basis. This the plaintiffs did in the face of the admitted fact that the 1939 assessment list had increased 136 names over the 1938 list.

We fail to see where these facts have any bearing upon the proper construction of the contract or the amount due thereunder for 1938 and 1939.

The trial court properly held that plaintiffs have been fully compensated under the contract.

Other points discussed in the briefs of counsel and some of which were relied upon by the trial court in its findings require no consideration. The court was right in denying recovery by the plaintiffs and the judgment is accordingly affirmed.

Mr. Chief Justice Adair, and Associate Justices Choate, Chea-dle, and Metcalf concur.

Rehearing denied May 6, 1947.