STATE, RESPONDENT, *v.* DE HART, APPELLANT.

(No. 2,599.)

(Submitted December 29, 1908. Decided February 1, 1909.)

[99 Pac. 438.]

*Criminal Law—Robbery—Evidence—Admissibility—Harmless Error—Confessions—Cross-examination—Res Gestae—Rebuttal—Discretion.*

Criminal Law—Evidence, Hearsay—Maps—Admissibility—Harmless Error.
  1.  Where defendant, charged with robbery, consented during the trial that the bailiff, in company with the prosecuting witness, might go over the route taken by the latter and defendant in the streets of a city on the night of the alleged offense, so as to enable the complaining witness, who was unfamiliar with the streets, to describe the place where the offense was committed, and the bailiff, having prepared a map of the streets traversed and indicated on it a spot pointed out by the prosecuting witness as the place where he was assaulted, thereafter testified from it, without objection, relative to the trip taken, the formal admission of the map, over defendant's objection that it was hearsay, if error, was nonprejudicial.

Same—Evidence—Motion to Strike—Waiver of Objection.
  2.  The court properly overruled defendant's motion to strike out the bailiff's testimony relative to what the prosecuting witness told him as to where the crime referred to in the above paragraph had been committed, the trip having been taken with his consent and no objection made at the time the evidence was received.

Same—Evidence—Refreshing Recollection.
  3.  The prosecuting witness had a right to refresh his memory as to where the assault was committed, by going over the route taken by himself and the defendant on the night of its commission, if by so doing he was enabled to identify the objects along the route theretofore taken by them; and his testimony thereafter as to the place was not objectionable.

Same—Exclusion of Evidence—Curing Error.
  4.  Alleged error in sustaining an objection to a question asked on behalf of defendant was cured where the testimony sought to be elicited was immediately thereafter given by the same witness.

Same— Evidence—Admissions—Confessions —Voluntary  Character—When Immaterial.
  5.  Where defendant testified on the trial to practically the same matters which police officers were permitted to give in evidence touching conversations had with him after his arrest, and where it appeared that at no time did defendant admit or confess the crime with which he was charged, but consistently denied it, the contention that such evidence was inadmissible inasmuch as it amounted to a confession, and that, before admitting it, the court should have satisfied itself that the admissions contained therein were voluntarily made, has no merit.  While admitting the truth of the statements, he cannot complain that they were involuntarily made.

Same—Cross-examination—Remarks of Court.

6. Where the record did not disclose that cross-examination by defendant's counsel was in fact limited, remarks of the judge commenting upon the method pursued by counsel on cross-examination in needlessly repeating questions did not constitute reversible error.

Same—Prosecuting Witness—Evidence—Friendly Feeling Toward Defendant—Immateriality.

7. Friendly feeling of the prosecuting witness toward the defendant cannot be considered by the jury in arriving at their verdict; and hence evidence that the prosecuting witness did not have defendant arrested of his own free will, and that he bore him no malice, was inadmissible.

Same—Evidence—*Res Gestae*—Erroneous Admission—When Harmless.

8. In a criminal prosecution, the erroneous admission of evidence as part of the *res gestae* was not prejudicial to defendant, where he himself on the stand admitted the very facts shown by the testimony thus erroneously admitted.

Same—Cross-examination—Scope.

9. Defendant having testified on his direct examination that he went to a certain city on the morning after the alleged robbery, a question by the county attorney whether he did not go to a different city and write a letter to a certain person was proper cross-examination, as bearing upon the truth of his statement on his examination in chief.

Same—Evidence—Admissibility—Prejudice—When  Defendant  may  not Complain.

10. Defendant, in answering the question referred to in the foregoing paragraph, volunteered the statement that he wrote the letter in the town to which he had testified he went after the alleged offense, and from there had sent the letter to another town to be posted so as to make it appear that he had gone to the latter place. *Held*, that, if prejudice resulted from permitting the question to be answered, it was his own fault, and he could not complain.

Same—Evidence—Rebuttal—Discretion.

11. Whether matters which properly constituted a part of the state's case in chief were admissible in rebuttal lay within the sound discretion of the trial judge, and where opportunity was given defendant to meet the testimony thus adduced and abuse of discretion was not shown, the action of the court will be held proper.

*Appeal from District Court, Lewis and Clark County; Thos. C. Bach, Judge.*

C. H. DE HART was convicted of robbery, and appeals from the judgment. Affirmed.

*Mr. H. L. Clayberg*, for Appellant.

Error was committed in allowing the alleged confessions of defendant to go in without first determining whether they were given voluntarily or under duress. (*State* v. *Sherman*, 35 Mont. 512, 119 Am. St. Rep. 869, 90 Pac. 981.)

The cross-examination of a witness should be confined to matters brought out on direct examination, and to those matters only. This is especially true where the witness is the defendant in a criminal action. (*Philadelphia etc. R. R. Co.* v. *Stimpson,* 14 Pet. 461, 10 L. Ed. 535; *State* v. *Glcim,* 17 Mont. 30, 52 Am. St. Rep. 665, 41 Pac. 998, 31 L. R. A. 294; *Borden* v. *Lynch,* 34 Mont. 503, 87 Pac. 609; *People* v. *O'Brien,* 66 Cal. 602, 6 Pac. 695; *People* v. *Yeaton,* 75 Cal. 415, 9 Am. St. Rep. 216, 17 Pac. 544; *People* v. *Bishop,* 81 Cal. 113, 22 Pac. 477; *People* v. *Wong Ah Leong,* 99 Cal. 442, 34 Pac. 105; *People* v. *Baird,* 104 Cal. 464, 48 Pac. 310; *People* v. *Un Dong,* 106 Cal. 88, 39 Pac. 12; *People* v. *Gallager,* 100 Cal. 475, 35 Pac. 80; *People* v. *Arrighini,* 122 Cal. 126, 54 Pac. 591; *People* v. *O'Brien,* 130 Cal. 6, 62 Pac. 297.)

Statements made to a witness about an hour and a half after the commission of a crime were incompetent and inadmissible as not forming any part of the *res gestae.* (*State* v. *Pugh,* 16 Mont. 343, 40 Pac. 861; *People* v. *Ehring,* 65 Cal. 135, 3 Pac. 606; *People* v. *Ah Lee,* 60 Cal. 85; *People* v. *Wong Ark,* 96 Cal. 125, 30 Pac. 1115; *People* v. *Lane,* 100 Cal. 379, 34 Pac. 856.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

The defendant was convicted in the district court of Lewis and Clark county of the crime of robbery and appeals from the judgment. The prosecuting witness, the man alleged to have been robbed, was named Haar.

1. At the trial John F. Flannery, chief of police of Helena, a witness for the state, was asked: "Did you have any conversation with the defendant in regard to the alleged robbery of Haar?" Defendant's counsel interposed this objection: "We object. No proper foundation has been laid. There has been no proof adduced as yet as to any conversation, nor as to any offense." The objection was overruled, and the witness answered, in substance, that the defendant first denied that he

knew Haar or was in his company, but afterward acknowledged that he did know him, and said that Haar and a man had gotten into a fight on Sixth avenue, and that was how Haar got a scar on his head. It is contended in this court that the evidence was inadmissible because it amounted to a confession "made by a person under arrest to police officers or those having authority over him, without first determining the facts and circumstances surrounding the making of such confession and satisfying the court that such confessions were made fairly and voluntarily, without fear or hope of reward or benefit therefrom, or under duress of any kind or nature." We shall hereafter pass upon the merits of this contention, as applied to the facts disclosed by the record in this particular case; but here it is sufficient to say that the objection interposed did not raise the question.

2. Haar testified: That he was in a place called Steinbrenner's saloon, in Helena, about 10 o'clock of the night in question, having come from Townsend the same evening; that defendant came into the saloon, and they sat down by a table and drank some beer; afterward defendant undertook to show him a lodging-house, and they went out onto the street; that, when they got some distance off Main street, the defendant "pounded him on the head with something," and he fell down, whereupon defendant robbed him of his pocketbook, containing about $20 in money, and ran away; that he became unconscious for about an hour and later found his way back to Steinbrenner's place and washed the blood off his face. It appeared that the witness was unacquainted with the names of the streets of Helena and had some difficulty in describing the place of the assault, although he said he could go there again and had been "around there yesterday and looked and saw where it was." The court then suggested that during recess the witness should go with the bailiff "and have the place fixed so that he can give the names." To this the defendant's counsel consented, and afterward the bailiff testified that the witness went over the ground with him, pointed out the streets traversed on the night of the

alleged robbery, and finally indicated a certain spot on Fuller Avenue as looking like the place where defendant assaulted him, as near as he could remember. It appears from the record that the bailiff had made a map of the route and was testifying from it. The county attorney asked: ''Have you indicated the point on the map that he indicated?'' The answer was in the affirmative. Witness then testified that the map fairly represented the streets and buildings with reference to Fuller Avenue, and that a certain line on the map indicated the route which they took. All of the foregoing went in without objection, but when the map was formally offered in evidence it was objected to, for the reason that, in so far as it showed the place of the alleged assault, it was hearsay. Regardless of whether or not the objection was technically well taken, we cannot see how the defendant was prejudiced by the formal receipt of the map in evidence, after the witness had used it to illustrate his testimony and had definitely described the spot where Haar said the assault took place. Haar afterward testified that the red line on the map indicated, to the best of his recollection, the course he traveled on the night of the occurrence.

3. Defendant moved to strike out the testimony of the bailiff relating to what Haar told him as to where the assault took place; but, as the testimony was received without objection, and the trip was made with the consent of defendant's counsel, this motion was properly overruled.

4. Defendant objected to the witness Haar testifying, after he made the trip with the bailiff, as to where he was assaulted; but we see no merit in this objection. The witness had a right to refresh his recollection by going over the ground again, if by so doing he was able to identify the objects along the course theretofore taken.

5. Haar testified that he and defendant sat at a table in the saloon drinking, and that defendant saw his pocketbook at that time. Counsel for defendant then asked whether it was possible for De Hart to see the money when Haar took out the pocketbook. The court sustained an objection to the question,

and the ruling is assigned as error; but no possible prejudice could have resulted, because the witness testified immediately afterward that he did not know whether De Hart could see the money or not.

6. In addition to the testimony of the chief of police, other officers were allowed to testify that they had conversations with the defendant touching the offense with which he was charged, while he was in their custody. The defendant objected to this testimony for the reasons hereinbefore set forth. An examination of the testimony shows that at no time did the defendant admit or confess that he committed the crime of robbery. On the contrary, he denied that; but he did admit to the officers that he had a quarrel with Haar, that he had a fight with him and knocked him down. These statements may have been in the nature of admissions on defendant's part, but he himself testified at the trial that they quarreled, and he struck Haar and knocked him down. He denied that he robbed him. It is true that he did testify that he was afraid of the officers when he talked with them, but how could that fact possibly affect the verdict, when he told in court the same story told to the officers, no more and no less? While admitting the truth of the statements, he cannot complain that they were involuntarily made. We find no reversible error on this point.

7. Counsel for the defendant in his brief complains bitterly of the treatment accorded him during the trial by the district judge; but, whatever the facts may have been, the record does. not disclose any conduct on the part of the judge that would warrant the conclusions drawn by counsel. A specific error complained of is this: Counsel for defendant had examined the witness Haar for some time touching the question whether De Hart could see the money in the pocketbook. Witness finally said: "Sure, the man seen it when I opened the pocketbook." The court thereupon remarked: "Now he has answered it. I will limit you to half a dozen questions, and no more. You may ask him if he went in there, if he sat down, if he had a pocketbook, if he opened it, and if they or any others were in

a position so that they could have seen if there was money in the pocketbook.'' Defendant's counsel objected to the language and the ruling of the court. And again: Defendant's counsel asked: ''How much money did you say you had when you got to Helena?'' The witness answered: ''Twenty-three or four dollars. Something like that, or a little over.'' The court again said: ''Don't ask any more questions about that amount. I think you have got that a dozen times. If you want to distinguish between $23 and $24, why go ahead.'' Counsel continued to cross-examine, and it does not appear that the court in fact limited the cross-examination.

8. Counsel for defendant asked Haar whether he had defendant arrested of his own free will, and the court sustained an objection to the question. Counsel then asked: ''Do you bear De Hart any malice?'' The court refused to allow the defendant to answer, whereupon defendant's counsel stated: ''I want to show that this witness is not a willing one; that he didn't want to have De Hart arrested.'' This presents a new phase of the question ordinarily raised. It will be observed that counsel did not desire to show hostility, but rather the contrary. We think the court was right in holding that the friendly feeling of the prosecuting witness toward the defendant was not a matter for the jury to take into consideration in arriving at a verdict.

9. The court allowed the county attorney to prove by the bartender at Steinbrenner's that when Haar returned to the saloon he said he had been hit on the head by De Hart. The state contended that this remark was part of the *res gestae,* and the record does not inform us what the court's opinion was, aside from the fact that he allowed the testimony to go in. We do not regard it as a part of the *res gestae.* It was, viewed in the light of the other testimony, clearly a narration of a past occurrence. But, again, we find that the defendant on the witness-stand admitted the very act that Haar complained of to the bartender, no more and no less; and therefore the defendant suffered no prejudice by the admission of the testimony.

10. The court overruled the defendant's objection to the following question propounded to the bartender: "Is it not true that a man with a pocketbook in his hand, in his left pocket, standing up there by the bar, might take out that pocketbook, take out a silver dollar, and put the pocketbook back, and you not have seen it?" We find no error in this ruling.

11. Defendant complains that the court allowed the county attorney to cross-examine him in regard to matters not touched upon in his direct examination. There is no merit in this objection. Defendant had testified that the morning after the affair with Haar he went to East Helena. The county attorney inquired whether he did not go to Butte and write a letter from there to one Groseclose. This was objected to, and the objection overruled. We think the question was proper as bearing upon the truth of defendant's statement that he went to East Helena. (See *State* v. *Howard,* 30 Mont. 518, 77 Pac. 50.) But in answer to the question defendant volunteered the statement that he wrote a letter in East Helena and sent it to Butte to be posted, and he afterward testified without objection that he did so in order to make it appear that he had gone to Butte. If he was prejudiced by this testimony, it was his own fault.

12. There was no error in allowing the witness Shoemaker to testify in rebuttal to matters that properly constituted a part of the state's case in chief. This was within the sound discretion of the court. Opportunity was offered to defendant to meet the testimony if he so desired, and we find no abuse of discretion. Neither was there error in the admission of Prickett's testimony.

We find no error in the record, and the judgment must be affirmed. It appears to us that the defendant had a fair and impartial trial, and, judging from the able and exhaustive briefs filed by his counsel in this court, we have no hesitancy in saying that his rights were well protected in the court below. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.