STATE, RESPONDENT, *v.* HOWARD, APPELLANT.

(No. 1,992.)

(Submitted May 25, 1904.  Decided June 18, 1904.)

*Robbery — Information—Charging One Under Aliases—Evidence—Admissibility — Letters—Jurors — Competency—Ownership of Stolen Property—Insanity.*

1.  Where an information was against one as George Howard, alias James Howard, alias Joe Kirby, a contention that the information did not conform to the requirements of Sections 1832 and 1834, Penal Code, is without

merit ; the information having charged his prior conviction, and the differ-
ent names being for the purpose of identifying him as the person previously
convicted.

2.  An information on a prosecution for robbery which charged that the prop-
    erty was taken by means of force and putting in fear, and that it was taken
    from the person and possession and from the immediate presence of a
    specified person, did not charge more than one offense.

3.  The granting or refusing of a motion for a continuance in a criminal case
    is within the sound discretion of the trial court.

4.  The action of the trial court in refusing or allowing a continuance will not
    be interfered with on appeal unless there has been an abuse of discretion.

5.  Where jurors state on their *voir dire* examination that they were prejudiced
    against the defense of insanity, but upon further examination say that
    they would treat it like any other defense ; would follow the court's instruc-
    tions thereon, and, if the instructions should in any manner differ from
    their own ideas, they would follow the instructions, they have qualified
    themselves as competent jurors.

6.  Where a venireman in a criminal case stated on his *voir dire* that he had
    read the newspaper accounts of the alleged robbery, and had formed an
    opinion, but not a fixed one, and on re-examination he said he could en-
    tirely discard the opinion thus formed, and give the defendant as fair a
    trial as if he had never heard of the case, he was competent.

7.  Where defendant, while engaged in attempting to rob the safe on a train,
    robbed a mail clerk, on a prosecution for the robbery of the mail clerk it
    was proper to admit evidence as to all the details of the attempted robbery
    of the train, and a conspiracy therefor.

8.  Where, on a criminal prosecution, the state offered in evidence a letter
    claimed to have been written by accused, and a witness testified that he
    was familiar with defendant's handwriting, and that the letter looked like
    his writing, and that the signature was his signature, there was a sufficient
    identification of the letter as one written by defendant.

9.  Where a letter improperly admitted was immaterial, and the only defense
    made in the case was insanity, the admission of the letter was harmless
    error.

10. In a criminal case, error in the admission of evidence, to secure a reversal
    of a judgment of conviction, must be prejudicial to the defendant.

11. Where the warden of the penitentiary testified that defendant had been
    confined in the penitentiary, and there was admitted in evidence a commit-
    ment against him, and it appeared that the date of his commitment and
    release corresponded with the requirements of the commitment, and other
    witnesses testified that they knew defendant when he was in the peni-
    tentiary, an objection that defendant was not identified as the man to
    whom the commitment referred was of no merit.

12. The proper manner of proving a prior conviction is not by the introduction
    of the commitment, but by the record of the judgment.  (Code of Civil Pro-
    cedure, Sec. 3193.)

13. Where, on a prosecution for robbery, a witness on direct examination testi-
    fied that he had been confined in the penitentiary, and that he had known
    the defendant for about fifteen months, and had observed his demeanor at
    the penitentiary, and that he thought defendant insane, questions put to
    him on cross-examination for the purpose of showing that he was a member
    of the conspiracy which resulted in the robbery were not improper, as ex-
    ceeding the proper limits of cross-examination.

14. Where a witness for defendant had testified that he had been in the peni-
    tentiary, and that he was then in jail, a question put to him on cross-
    examination as to whether he was not in jail on a charge of holding up a
    saloon was not erroneous, as tending to degrade the witness.

15. The question was not prejudicial, as not proper cross-examination.

16. On a prosecution for robbery, the fact that the money taken was in prose-
    cutor's possession is sufficient evidence of ownership to sustain a conviction.
17. On a prosecution for robbery, the question whether defendant was, by
    reason of insanity, incapable of having the criminal intent necessary to the
    commission of the crime, was raised by a plea of not guilty.
18. On a prosecution for robbery, the question whether defendant was, by
    reason of insanity, incapable of having the criminal intent necessary to the
    commission of the crime, was a question of fact for the jury.
19. Penal Code, Section 2521, provides that when an action is called for trial,
    or at any time during a trial, or when the defendant is brought up for
    judgment, if a doubt arises as to the sanity of defendant, the court must
    order the question as to his sanity to be submitted to a jury. *Held,* that
    the doubt mentioned in the statute is one arising in the mind of the judge,
    and one which he must determine. .

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

GEORGE HOWARD, alias James Howard, alias Joe Kirby, was convicted of robbery. From the judgment, and an order deny-ing a new trial, he appeals. Affirmed.

*Mr. Alexander Mackel,* and *Mr. William Meyer,* for Appel-lant.

*Mr. James Donovan, Attorney General,* for the State.

MR. COMMISSIONER CALLAWAY prepared the follow-ing opinion for the court:

The defendant was convicted upon an information accusing him of the crime of robbery, and charging his prior conviction of a like offense as the ground for a heavier punishment. He was sentenced to imprisonment at hard labor for thirty years. This appeal is from the judgment and an order denying a new trial.

1. He was informed against as George Howard, alias James Howard, alias Joe Kirby. He makes the point that the informa-tion does not sufficiently conform to the requirements of Sections 1832, 1833 and 1834, Penal Code, in that there is no certainty as to the party charged, or as to the name of the party charged. Section 1832 of the Penal Code provides that the information must contain the name of the party. Section 1841 provides that

the information is sufficient if it can be understood therefrom that the defendant is named, or, if his name cannot be discovered, that he is described by a fictitious name, with a statement that his true name is to the county attorney unknown.

A man's name is simply the sound or sounds by which he is commonly designated by his fellows, and by which they distinguish him. It is a mere means of description. Sometimes a man is known by several different names, and it was formerly the custom, in drawing indictments, to charge him under all the names by which he was known; connecting them with the words *"alias dictus,"* or with simply *"alias."* These words mean "otherwise called" or "otherwise." The county attorney attempted to be more certain than the statute requires. He charged the defendant, evidently, by three names by which the latter had been known. Had he charged the defendant as George Howard, stating that his true name was unknown, the statute would have been met, and such is believed to be the better practice.

It is readily perceived that in a given case a defendant may be prejudiced by the use of the *alias dictus* by which a number of names may be joined, and thus all read to the jury; suggesting to them that the defendant has been using assumed names. But no such prejudice resulted in this case. A like point was decided in *People v. Maroney,* 109 Cal. 277, 41 Pac. 1097, in which the court said that while, for most purposes, the need and use of the charging *alias* are done away with, it is still proper in some instances, an illustration of one of which was offered by the indictment then before the court. The indictment charged the defendant with conviction of prior offenses, and the court observed: "For the purpose of identifying him as the person who had suffered those convictions, the use of the *alias* was not only permissible, but proper." At the trial the defendant in this case was referred to sometimes as "Howard," sometimes as "Kirby," and as "Howard or Kirby." He was formerly convicted under the name of George Howard, and it seems that he gave his name to the court as Joseph Kirby. The

point urged by defendant is not well taken. (*Lee* v. *State,* 55 Ala. 259; *Haley* v. *State,* 63 Ala. 83; *Barnesciotta* v. *People,* 10 Hun, 137; *Kennedy* v. *People,* 39 N. Y. 245.)

2.    The next point urged is that the information charges two offenses, in that it is alleged that the property was taken "by means of force and putting in fear," and that is was taken "from the person and possession and from the immediate presence of one W. M. Bell." It is contended that a robbery accomplished by means of force is a different kind of robbery from that accomplished by means of fear, that a robbery from the person is different from a robbery from his immediate presence, and that the information in this respect is uncertain. The defendant presented these points by demurrer, which was overruled. We think these objections are hypercritical. Robbery may be, and often is, accomplished by the concurrence of force and fear. When it is accomplished by force, fear is the usual concomitant. If one were not apprehensive of the force, he would not have the fear. So, on the second point suggested, how can there be a taking from one's person, and that taking be not from his immediate presence? Of course, the article taken might be from the immediate presence without being taken from the person. That portion of the information which is criticised is substantially similar to the one before the court in *State* v. *Clancy,* 20 Mont. 498, 52 Pac. 267, and is not vulnerable to the attacks made upon it by defendant. When tested by the rules prescribed by the Penal Code, it is sufficient. (*State* v. *Gill,* 21 Mont. 151, 53 Pac. 184.)

3.    The defendant moved for a continuance, which the court denied. An examination of the affidavit upon which the motion was based shows that it was insufficient for the purpose intended, and the court's action upon the motion was clearly correct. Moreover, the granting or refusing of a motion for the continuance of a criminal case rests in the sound discretion of the court below, and the appellate court will not interfere unless there has been an abuse thereof. (*Territory* v. *Perkins,* 2 Mont. 467; *Territory* v. *Harding,* 6 Mont. 323, 12 Pac. 750; *Territory* v. *Roberts,* 9 Mont. 12, 22 Pac. 132.)

4. Three jurors were accepted over defendant's challenges. Two of them, when upon their *voir dire* examination, said in response to questions put by defendant's counsel that they were prejudiced against the defense of insanity. Upon examination by the county attorney and the court, they said, in effect, that they would treat it like any other defense the defendant might urge; would follow the instructions of the court thereon, and, if the instructions upon the law should in any manner differ from their own ideas, they would follow the instructions. In short, without discussing their testimony in detail, it may be said that they qualified themselves as competent jurors.

Another said that he had read the newspaper accounts of the alleged robbery, and had formed an opinion therefrom, but not a fixed one. Upon re-examination he said he could entirely discard the opinion then formed, and could give the defendant as fair a trial as if he had never heard of the case. This juror was clearly competent. (Penal Code, Sec. 2051; State v. *Mott,* 29 Mont. 292, 74 Pac. 728.)

5. The evidence showed that the defendant, together with one Cole, had entered into a conspiracy to "hold up" the Northern Pacific train near Homestake, in Silver Bow county. Accordingly they stopped the train about a mile from Homestake, and attempted to blow open the safe in the baggage car. While they were proceeding in furtherance of this conspiracy, the defendant, after having intimidated Bell, a mail clerk, by the use of a revolver, reached into Bell's pocket and took therefrom the sum of 75 cents. The taking of the 75 cents is the particular crime for which the defendant is prosecuted. At the trial the state was permitted to show the details of the entire transaction, commencing with the formation of the conspiracy in Butte, and following it out until the train was again allowed to go upon its way.

It is contended by the defendant that it was error to admit in evidence certain testimony concerning the details of the attempted "train robbery." "Robbery is the felonious taking of personal property in the possession of another, from his person

or immediate presence, and against his will, accomplished by means of force or fear." (Penal Code, Sec. 390.) It is therefore technically inaccurate to speak of a "train robbery." The meaning of the phrase, however, is clear. In this case the defendant and Cole intended to take personal property—the contents of the safe—from those who had it in charge, using such force and producing such fear as might seem to them to be necessary. It is said that the conspirators did not contemplate the robbery of Bell, and that crime was therefore not within the purview of the conspiracy. This point is not well taken. If, while a person is engaged in the commission of one felony, he commits another, evidence of the commission of both is admissible as part of the *res gestae. (People* v. *Pallister,* 138 N. Y. 601, 33 N. E. 741; *State* v. *Desroches,* 48 La. Ann. 428, 19 South. 250; *Seams* v. *State,* 84 Ala. 410, 4 South. 521; *People* v. *Nelson,* 85 Cal. 421, 24 Pac. 1006; *People* v. *Teixeira,* 123 Cal. 297, 55 Pac. 988; *Commonwealth* v. *Hayes,* 140 Mass. 366, 5 N. E. 264; *Dove* v. *State,* 37 Ark. 261; *Snapp* v. *Commonwealth,* 82 Ky. 173; *Kennedy* v. *State,* 107 Ind. 144, 6 N. E. 305, 57 Am. Rep. 99; *State* v. *McCahill,* 72 Iowa, 111, 30 N. W. 553, 33 N. W. 599; *State* v. *Dooley,* 89 Iowa, 584, 57 N. W. 414; *State* v. *Taylor,* 118 Mo. 153, 24 S. W. 449; *State* v. *Pike,* 65 Me. 111; *State* v. *Wentworth,* 37 N. H. 196; *Leeper* v. *State,* 29 Tex. App. 63, 14 S. W. 398.)

Defendant and Cole entered into a conspiracy to commit a felony, namely, the "train robbery," and set forth to carry it out. While actually engaged in an attempt to carry out the conspiracy, defendant committed another felony—the robbery of Bell—which, as it transpired, was but a part of the main transaction. The evidence objected to was clearly admissible.

6. The state was permitted to introduce in evidence a letter, which we quote in full, in order to arrive at a clear understanding of the matter involved. It is as follows: "Tom: From what I see in the papers and from what I can hear, you are afraid I am trying to ditch you. Well, you can come out in the Prosecuting Attorney's office and see what I say. You or no

one else will go to the 'pen' on account of me, and I was told by six different people, including your own lawyer, that you had me arrested, but we will let that go. You will never have occasion to say that I ditched you or no one else. But it serves me right in one way; you told me to have nothing to do with that wind-jamming, notoriety-loving Hoosier, and I would not take your advice so now I have got to pay for it. [Signed] G. Joe Kirby."

The defendant objected to the introduction of this letter on the ground that it was not sufficiently identified, and was incompetent, irrelevant and immaterial. The witness Cole testified that he was familiar with defendant's handwriting, and, after examining the letter, said: "It looks like his handwriting, and that is his signature there. That is all I can say. The signature and the body of the letter are the same handwriting." The first objection, therefore, is not well taken. (*State* v. *Mahoney,* 24 Mont. 281, 61 Pac. 647.) However, so far as can be determined from the record, the letter bore no relevancy to the crime committed. It was also wholly immaterial, and this fact alone saves the action of the court from reversal. We cannot see how the defendant in any wise could have been injured by its admission in evidence. It did not tend to prove the defendant guilty of the crime for which he was on trial, nor of any other crime, in the slightest degree. The most that can be said is that it indicates that defendant was in the possession of evidence inimical to the interests of Tom. Defendant asserts that he will not disclose such information, which assertion, presumably, was intended to assure Tom that defendant's sense of honor was unimpaired, although it was reported that he had been wronged by Tom. Then, again, defendant did not attempt to controvert the state's evidence showing the robbery of Bell by him, and that testimony was clear and convincing. The only defense which defendant attempted was that of insanity, and it failed utterly. It is manifest that defendant was not injured by the introduction of the letter. Technically, the court's action was inexcusably erroneous. But error, in order to secure a reversal for defendant, must be prejudicial to him, and this

clearly was not. (*Lane* v. *Bailey*, 29 Mont. 548, 75 Pac. 191.)

7. The witness Conley, warden of the penitentiary, testified that he had known the defendant, Howard, at that institution, and, speaking of the defendant, said: "He was confined there for seven years and three months on a charge of robbery from Silver Bow county. Howard was released from the penitentiary on the 26th day of January, 1903." Thereupon, over defendant's objection, the court admitted in evidence a commitment in the case of the state of Montana against George Howard, which recites that the defendant therein named was convicted of robbery on October 26, 1895, in the district court of Silver Bow county.

The defendant argues that there was no proof of the authenticity of the commitment, and further that the defendant was not identified as the man to whom it refers. Upon the record, these objections are captious. Evidently the commitment offered was the original. At any rate, no objection was made to the effect that it was not. The court doubtless inspected it when the objection was made, and was satisfied as to its sufficiency. Conley identified the defendant as the one who had been confined in the penitentiary for robbery committed in Silver Bow county. The defendant was committed on October 26, 1895, and released January 26, 1903, which exactly corresponds with the requirement of the committment. Other witnesses testified that they knew the defendant on trial while he was in the penitentiary. The proper way to prove the defendant's prior conviction was not by the introduction of the commitment, but by the record of the judgment. (Code of Civil Procedure, Sec. 3193.) But this was also done. The defendant therefore has no cause for complaint on this phase of the case.

8. The witness Furlong, on direct examination, testified that he had been confined in the penitentiary, and was at the time of the trial a prisoner in the county jail. He said he had known the defendant for about fifteen months, and had observed his demeanor at the penitentiary. From what he had

seen of the defendant, he thought the latter insane. On cross-examination, counsel for the state asked the witness a number of questions with the evident purpose of showing that Furlong was a member of the conspiracy "to rob the train." These questions were objected to as incompetent, irrelevant and immaterial, as well as being improper cross-examination. The court did not abuse its discretion in allowing these questions to be put to the witness, under the circumstances of the case. "The cross-examination would be of little value if the witness could not be fully interrogated as to his motives, bias and interest, or as to his conduct, as connected with the parties or the cause of action." (3 Jones on Evidence, Sec. 829.) The right of cross-examination extends not only to all facts stated by the witness in his original examination, but to all other facts connected with them, whether directly or indirectly, which tend to enlighten the jury upon the question in controversy, and this right should not be restricted unduly. (*Kipp* v. *Silverman*, 25 Mont. 296, 64 Pac. 884; *Cobban* v. *Hecklen*, 27 Mont. 245, 70 Pac. 805; *Hefferlin* v. *Karlman*, 30 Mont. 348, 76 Pac. 757; Code of Civil Procedure, Sec. 3376.) It is the duty of the trial court to exercise a sound legal discretion in controlling the cross-examination of a witness, and, if no abuse of discretion is shown, the appellate court will not interfere. (3 Jones on Evidence, Sec. 821.)

It is also insisted that the following question tended to degrade the witness: "You are in jail at the present time charged with holding up Swanson's saloon?" The witness answered in the affirmative. In the light of his previous testimony, we do not think the question tended to degrade him. On direct examination he had testified as to his confinement in the state prison, and that he was at the time of the trial confined in the jail. Nor, under the circumstances, was the allowance of the question prejudicial as not proper cross-examination. (*Matusevilz* v. *Hughes*, 26 Mont. 212, 66 Pac. 939, 68 Pac. 467.)

9. Defendant says the evidence is insufficient to sustain the conviction, for the reason that there is no evidence in the

record that the money taken was the property of Bell. The testimony discloses that defendant reached into Bell's pocket and took out the money after covering him with a revolver. The fact that the money was in Bell's possession is sufficient evidence of his ownership thereof to sustain the conviction. (*People* v. *Oldham,* 111 Cal. 648, 44 Pac. 312; *People* v. *Davis,* 97 Cal. 194, 31 Pac. 1109; *People* v. *Nelson,* 56 Cal. 77; *Bow* v. *People,* 160 Ill. 438, 43 N. E. 593; *State* v. *Hobgood,* 46 La. Ann. 855, 15 South. 406.)

10. The state did not offer any evidence to rebut that offered by defendant in support of his defense of insanity. The question as to whether the defendant had the criminal intent necessary to the commission of the crime was raised by his plea of not guilty. The question was one of fact. (*State* v. *Keerl,* 29 Mont. 508, 75 Pac. 362.) The jury heard all the evidence, and decided adversely to defendant's contention. Doubtless it acted within its province of considering the testimony on the question of insanity as of little or no weight. (Bishop's New Criminal Procedure, Secs. 669-673; *State* v. *Sullivan,* 9 Mont. 174, 22 Pac. 1088); and from the record, we do not think it acted unwisely.

The verdict was returned April 10, 1903. Three days later, when the defendant was brought into court to receive his sentence, his counsel asked that the question of the defendant's sanity be inquired into by a jury as required by law. The court denied the request, and the defendant assigns error.

Section 2521 of the Penal Code provides: "When an action is called for trial, or at any time during the trial, or when the defendant is brought up for judgment on conviction, if a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be submitted to a jury, which must be drawn and selected as in other cases; and the trial or the pronouncing of the judgment must be suspended until the question is determined by their verdict." The doubt mentioned in the above section is one arising in the mind of the presiding judge, and much must be left to his judicial conscience. Unless

there be a doubt in the mind of the judge *a quo*—a doubt which he must legally determine as he would determine any other matter of grave import before him—he will not be warranted in calling a special jury to try the issue. Such is the purport of the authorities. (*State* v. *Peterson,* 24 Mont. 81, 60 Pac. 809, and cases cited; *People* v. *Hettick,* 126 Cal. 425, 58 Pac. 918; *People* v. *Geiger,* 116 Cal. 440, 48 Pac. 389.) In this case the judge heard all the testimony upon the trial, as well as observed the demeanor and appearance of the defendant during its progress, and, from what he heard and saw, entertained no doubt as to the defendant's sanity. The record, we think, bears out his conclusion as correct.

We have given diligent attention to all other assignments of error urged by defendant's counsel which are argued in his brief, but find none prejudicial to defendant. It follows that the judgment and order should be affirmed.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

MR. JUSTICE MILBURN, being absent at the time of the delivery of this opinion, takes no part therein.

Rehearing denied.