SPURGEON, Respondent, *v.* IMPERIAL ELEVATOR CO., APPELLANT.

(No. 7,322.)

(Submitted March 20, 1935. Decided April 16, 1935.)

[43 Pac. (2d) 891.]

434

*Mr. Carl L. Brattin* and *Messrs. Libby & Harris* of the Bar of Grand Forks, North Dakota, for Appellant, submitted a brief; *Mr. Brattin* and *Mr. Charles L. Harris* argued the cause orally.

*Mr. John Lexcen* and *Messrs. Marron & Foor,* for Respondent, submitted a brief; *Mr. Lexcen* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to recover a balance alleged to be due from the sale of wheat to the defendant. The defendant corporation was a duly licensed public warehouseman under the laws of this state, operating a grain elevator at Culbertson.

In his complaint plaintiff alleged that between the sixth day of January, 1931, and the third day of April of that year, both dates inclusive, he sold and delivered to the defendant 2,826 bushels of wheat at 54 cents a bushel, and received the sum of $1,014.05 on the account. He sought judgment for the balance of the purchase price. By its answer defendant denied that it received 2,826 bushels of wheat from plaintiff; admitted that it received 1,822 bushels; and alleged that it had fully paid plaintiff for the latter number of bushels.

Plaintiff testified that, commencing on January 6, 1931, and ending on the thirteenth day of that month and year, he delivered the wheat in question to the elevator at Culbertson. Scale tickets for all but three truckloads of the wheat, in the handwriting of the agent of defendant and bearing his signature, were identified and received in evidence. As to the three loads delivered on the last day, proof was received of the loss

of the scale tickets, and testimony was given by plaintiff's son, who delivered the grain on that day, as to the approximate amount of wheat contained in the three loads. No storage tickets were delivered to plaintiff on this grain. According to his testimony and that of one of his sons, on April 3 he interviewed the agent of the defendant at the elevator in Culbertson and sold the grain for 54 cents a bushel, receiving a check on that day for a little more than $300 as part payment on the purchase price. He produced a slip of paper containing computations, which, he and his son testified, were made by the agent at the time of the sale and bore the total number of bushels of wheat delivered and the total sale price, at 54 cents a bushel. It was testified that the agent then informed plaintiff that the balance would be paid in a few days by other checks; he did in fact receive further checks on April 10 and 25, 1931, sufficient to aggregate the total amount which both parties concede was received on the purchase price of the grain.

The trial resulted in a verdict in favor of the plaintiff for the sum of $505.06, with interest. Judgment was entered in accordance with the verdict. The appeal is from the judgment.

The defendant has specified a number of errors upon the rulings of the court on the admission and exclusion of testimony. Joe Spurgeon, the son of the plaintiff, testified on direct examination as to the number of bushels in the three loads of grain delivered on January 13, for which plaintiff was unable to produce scale tickets. On cross-examination the following question was propounded to him: "There wasn't any reason why you should have charged your mind?" Objection was sustained to this question upon the ground that it was argumentative. It is obvious that the question was objectionable on the ground urged, and the trial court properly sustained the objection.

On the cross-examination of plaintiff defendant made the following inquiry: "Didn't Mr. Burke, when you talked to him and told him that you had grain in the elevator, didn't he ask you if you had storage or scale tickets for it?"

An objection was interposed upon the ground that the question was improper cross-examination and that no proper foundation had been laid. It was sustained by the court. Mr. Burke, referred to in the question, was the division superintendent of the elevator company. Plaintiff on his direct examination had not testified to any conversation between himself and Mr. Burke. In the case of *Vonault* v. *O'Rourke*, 97 Mont. 92, 33 Pac. (2d) 535, 542, we said: "Section 10665, Revised Codes 1921, provides: 'The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith,' etc. This section permits a wide range for cross-examination, but it does not admit of examining the witness on matters not touched upon in his direct examination or connected therewith. (*Downey* v. *Northern Pacific Ry. Co.*, 72 Mont. 166, 232 Pac. 531; *State* v. *Smith*, 57 Mont. 349, 188 Pac. 644; *Alley* v. *Butte & Western Min. Co.*, 77 Mont. 477, 251 Pac. 517)." Obviously, under this state of the record, the question was improper cross-examination. The only other purpose which the question might properly have served would be the laying of the foundation for impeachment. The question did not indicate the time, place, and persons present, as required by section 10669, Revised Codes 1921. The objection was properly sustained.

The witness Grobe, the general superintendent of the elevator company residing in Minneapolis, Minnesota, was called as a witness on behalf of defendant. He testified as to the duties of their agent at Culbertson, Montana, among which was the duty of the agent to report to the general office in writing. He produced the report for April 4, 1931, which was intended to disclose all the grain received on a given day. He testified that such report was one of the regular records of the defendant company kept in its general office in Minneapolis. The report was also intended to include all purchases of grain made on a given day. At the time the witness Grobe testified, the checks which plaintiff had received in part payment for the wheat had been received in evidence. Inquiry was made of the witness on direct examination as to what particular grain one

of these checks, known as Exhibit A, represented. He replied that he could not answer without consulting one of these reports. Counsel for the defendant then informed the witness that he might refer to it. At this point objection was interposed by counsel for plaintiff upon the ground that no proper foundation had been laid; the objection was sustained. It is urged that the witness should have been permitted to consult the report as a memorandum for the purpose of refreshing his recollection. No one testified concerning the matter of whose handwriting was found in the report; the witness did not testify that it was in his own; neither was any further identification thereof made, aside from what we have already indicated supra.

Our statute, section 10664, Revised Codes 1921, provides when and in what circumstances a witness may be allowed to refresh his memory by the use of memoranda. In the case of *Marron* v. *Great Northern Ry. Co.,* 46 Mont. 593, 129 Pac. 1055, 1057, this court had under consideration this particular section, then section 8020, Revised Codes of 1907. There it said, after referring to and quoting from the section: "The first class includes the witness whose memory can be refreshed by reference to the memoranda. The second class includes the witness who does not retain any recollection of the particular facts recorded in the memoranda, even after he examines the entries which he made himself. The witness of the first class may refresh his memory, and, having done so, may then testify independently of the memoranda. The witness of the second class may testify directly from the memoranda. But before either one will be heard at all these preliminary facts must be made to appear: (a) The entries must have been written by the witness himself, or under his direction; (b) they must have been written at the time the facts occurred, or at a time when the facts were fresh in the witness' memory; and (c) the witness must have known at the time the entries were made that they correctly stated the facts." (See, also, *McLean* v. *Rice,* 63 Mont. 556, 208 Pac. 252.) Counsel wholly failed to qualify the witness so that he might refresh his recollection by the use

of the memorandum. Indeed, from the record in its entirety, it is doubtful whether the witness could have been so qualified. There was no error in the court's ruling.

Specification of error No. 4 relates to an attempt of counsel for the defendant to have the same witness, Grobe, refer to one of these reports already discussed. What we have just said above disposes of the contention adversely.

On the cross-examination of plaintiff, defendant's counsel without objection made inquiry as to a conversation between plaintiff and Mr. Burke, the division superintendent of defendant company. As we have already indicated, that portion of · the cross-examination was improper. Mr. Burke testified as a witness for defendant and gave his version of the conversation, supra. On rebuttal the son of plaintiff was called as a witness, and a question was propounded to him seeking to secure his version of the same conversation. Objection was interposed on the ground that the question was improper rebuttal. The court observed that while ordinarily the question would be improper, because of the procedure which had already occurred, it would overrule the objection.

Section 9349, Revised Codes 1921, provides with reference to the order of trial of cases by jury; and, after providing for the production of evidence by the respective parties to the action, subdivision 4 reads as follows: "The parties will then be confined to rebutting evidence, unless the court, for good reasons, in furtherance of justice, permits them to offer evidence in their original case." The objection here interposed went largely to the question of order of proof, with respect to which the trial court must be permitted to exercise a reasonable discretion (*Hawley* v. *Richardson*, 60 Mont. 118, 198 Pac. 450; *Stephens* v. *Elliott*, 36 Mont. 92, 92 Pac. 45; *Morrison* v. *Concordia Fire Ins. Co.*, 72 Mont. 97, 231 Pac. 905), subject to review only in case of abuse of discretion (*Noyes* v. *Clifford*, 37 Mont. 138, 94 Pac. 842). The entire difficulty arose because defendant indulged in improper cross-examination, although without objection. Since the situation was of the defendant's

own making, the court did not abuse its discretion in permitting the question.

Defendant sought to offer in evidence four instruments— ██ reports from Culbertson to the defendant company at Minneapolis. Objection was sustained to their reception upon the ground that there was no proper foundation laid for their admission. We already in the discussion of a previous specification of error detailed the extent of the foundation laid. It is urged that they were admissible under what is commonly called the "shop book rule." In *Meagher* v. *Harrington,* 78 Mont. 457, 254 Pac. 432, 436, this court had under consideration the facts necessary to be laid for the admission of books of account, and it was there written: "The contents of books of account are not primary evidence of the transaction recorded, and their admission in evidence constitutes an exception to the rule against the admission of hearsay evidence which has grown up in the practice through necessity. In order to take this short-cut in proof, the party offering such books must conform strictly to the rule regarding the laying of a proper foundation therefor, so often stated by the courts. What is said in *State* v. *Yegen,* 74 Mont. 126, 238 Pac. 603, is pertinent here: 'That the rulings admitting the exhibits were erroneous does not admit of doubt. They violated the elementary rule of evidence that, before book entries are admissible, it must be shown that the books were kept in the usual course of business, were kept honestly and correctly, and that the entries were duly made, contemporaneously with the transactions to which they relate.' In the absence of such a preliminary showing, such book entries are never admissible." No one testified that the reports in question were true and correct or that they were honestly made; and, whatever the rule may be elsewhere, the foundation was insufficient to permit their admission in evidence.

Plaintiff's Exhibit No. 5 was the slip of paper containing in the handwriting of Moore, the agent of defendant at Culbertson, the computations of the number of bushels of grain received; it was received in evidence over objection. The ex-

hibit contained nothing but the figures; it was signed by no one. It is urged that it was error to admit it in evidence. In admitting it, the court stated that it was admitted for a limited purpose only, and that, if an appropriate instruction were offered, the jury would be so advised at the conclusion of the trial.

The defendant argues that the exhibit was · insufficient to meet the requirements of section 7519, subdivision 4, Revised Codes 1921, which is the statute of frauds as applied to sales of goods and chattels. It was unnecessary for plaintiff, in order to prove the sale, to produce any written memorandum signed by the defendant, for the wheat had already been delivered to defendant and a part of the purchase price was paid at the time of the sale, either of which facts is sufficient to take the transaction out of the statute requiring a signed note or memorandum. It was testified, however, that the computations were in the handwriting of defendant's agent. The circumstances under which they were made and their purpose were. also testified to. The paper tended to corroborate the testimony of plaintiff's witnesses as to the number of bushels of wheat delivered. Doubtless the trial court would have given the instruction as indicated, if offered. Counsel in their brief say that no such instruction was given. The record is barren of any reference to the instructions given by the court or the instructions offered by either of the parties but refused. In this state of the record we see no error in the admission of the exhibit.

At the close of the evidence, defendant made a motion for a directed verdict on the ground that the contract sued upon was invalid as being against the public policy of the state. Witnesses for the plaintiff had testified that at the time of the sale, in April, 1931, plaintiff inquired of the agent of defendant as to the amount of storage on the grain, and was advised by the agent that there were no storage charges. Counsel base their argument upon two statutory provisions, viz., section 3585, Revised Codes 1921, reading as follows: "If any public warehouseman subject to the provisions of this Act

shall, directly or indirectly, by any special charge, rebate, drawback, or other device, demand, collect, or receive from any person, or persons, a greater or lesser compensation for any service rendered, or to be rendered, in the handling or storage of grain, than he demands, collects, or receives from any other person or persons for a like and contemporaneous service in the handling or storage of grain, under substantially similar circumstances or conditions, or if any such public warehouseman shall make or give any undue or unreasonable preference or advantage to any person, company, or corporation in any respect whatever, or shall subject any particular person, company, firm, or corporation, to any undue or unreasonable prejudice or disadvantage, in any respect whatsoever, such warehouseman shall be subject to a penalty as herein provided''; and upon a portion of section 3 of Chapter 154 of the Laws of 1929, reading as follows: ''Charges must be made by all public warehousemen subject to the provisions of this Act, for the handling or storage of grain, as follows: * * * (d) The charges for storage shall be one-thirtieth (1/30) of one cent (1¢) per day per bushel for each day in storage after period of free storage has elapsed. (e) Failure on the part of any public warehouseman to comply with the provisions of this Act will render the licenses of such warehouseman subject to revocation and cancellation by the Commissioner of Agriculture.''

It is argued that, because the defendant warehouseman was required under these provisions to charge storage and failed so to do, the contract of sale was invalid and unenforceable. They urge that, since these statutes prescribe a penalty, the penalty is equivalent to an express prohibition, and that a contract in violation of their terms is void, relying upon what was said to that effect in the case of *McManus* v. *Fulton*, 85 Mont. 170, 278 Pac. 126, 67 A. L. R. 690. We have no quarrel with the rule of law for which defendant contends, as announced in the *Fulton Case*, but doubt its application to the facts in this case. Delivery of grain for storage constitutes a bailment. (*Whorley* v. *Patton-Kjose Co.*, 90 Mont. 461, 5

Pac. (2d) 210.) This contract of bailment arose when plaintiff delivered his grain. As a result of it, the defendant was obliged, under the statute supra, to charge storage. This contract terminated when the grain was sold. A new contract was entered into at the time of the sale. The contract of bailment and the contract of sale were separate and distinct contracts; true, both related to plaintiff's wheat. According to plaintiff's testimony, the wheat was sold for the agreed price of 54 cents a bushel. He did make inquiry as to whether there would be storage; but there is no suggestion in the evidence that the fact that no storage would be charged was an inducement for him to sell his wheat on that day or in agreeing upon the sale price. He said he went to the elevator and told defendant's agent that he desired to sell the wheat, to which the agent responded, "All right." If the waiver of storage had been an inducement for entering into the contract of sale, there might be merit in defendant's contention. The contract [10] of sale was a legal contract. The plaintiff had a right to sell his wheat and the defendant the right to purchase it. A contract is not invalid as being against public policy, unless the illegality enters into either the consideration or the promise. (*Armour & Co.* v. *Jesmer,* 76 Wash. 475, 136 Pac. 689; *Kansas City Hydraulic Press Brick Co.* v. *National Surety Co.,* (C. C. A.) 167 Fed. 496; *National Distilling Co.* v. *Cream City Importing Co.,* 86 Wis. 352, 56 N. W. 864, 39 Am. St. Rep. 902.) If we were to interpret the language of section 3 of Chapter 154, supra, providing that "charges must be made by all public warehousemen" for storage, to mean "to collect storage" at the time of the termination of the contract of storage or bailment, we fail to see where there is any illegality in the transaction, as defendant did not at the time of the sale, and has not yet, paid plaintiff all to which he was entitled. The amount still owing to plaintiff is many times the amount of the storage. If this manner of performance of the contract was illegal, it did not bar plaintiff's right of recovery, for there is no policy of the law against his recovering, unless his contract of sale was illegal; a contract is not necessarily illegal

because it is carried out in an illegal way. (*Fox* v. *Rogers*, 171 Mass. 546, 548, 50 N. E. 1041; *Armour & Co.* v. *Jesmer*, supra.)

Defendant did not counterclaim in this action for the amount of the storage, as it might well have done. No counterclaim having been pleaded, it could not be proved under a general or special denial. (*Union Mercantile Co.* v. *Jacobs, Sultan & Co.*, 20 Mont. 554, 52 Pac. 375.) And, unless a counterclaim is pleaded in some form, there is nothing on which to base a judgment. (*Galiger* v. *McNulty*, 80 Mont. 339, 260 Pac. 401.)

It was argued orally before the court that it was incumbent ▮ upon plaintiff, in order to recover in this case—if we should hold the contract of sale to be valid—to tender the amount of the storage. That would doubtless be the correct rule if plaintiff were here seeking to recover upon his contract of bailment. (*New Aberdeen Equity Exchange* v. *Heller*, 58 S. D. 531, 237 N. W. 777.) Plaintiff is not seeking to recover upon that contract but upon his contract of sale. The storage charges arose out of an independent contract, and therefore were the proper subject of counterclaim. The motion for directed verdict was properly denied.

Defendant assigns error upon the ruling of the court denying its motion for a new trial. No new questions are discussed by counsel under this specification, and hence what we have said heretofore disposes of this assignment.

Judgment affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.