STATE OF MONTANA, Plaintiff and Respondent, v. GEORGE CARNS, Defendant and Appellant.

No. 10005.

Submitted September 14, 1959. Decided October 29, 1959.

345 Pac. (2d) 735.

See **C. J. S.** Witnesses, § 596.

Rankin and Acher, Helena, for appellant. Wellington D. Rankin and Arthur P. Acher, Helena, argued orally.

Forrest H. Anderson, Atty. Gen., Wm. F. Crowley, Asst. Atty. Gen., Wm. J. Speare, Yellowstone County Atty., Billings, for respondent. Wm. F. Crowley, Asst. Atty. Gen., argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment of conviction on a jury verdict on a charge of assault in the second degree. The defendant was sentenced to a five-year term in the penitentiary.

The complaining and principal witness for the State was the person upon whom the assault was committed, Pearl Anderson. She testified that at about 1:00 a. m. in the early morning of July 19, 1958, while alone in her residence, she was awakened by a noise. She telephoned a Mrs. Larson, her baby sitter, and while talking to her a man stood up from behind a chair. The man was masked, said he was going to kill her because she was a squealer and jerked the phone from her hands. She grabbed a club and hit her assailant whereupon he took the club away, hit her with it, then with his fists and finally slashed her with a razor. After a fierce struggle, she escaped to the street screaming, in a beaten hysterical condition, clad only in a nightgown.

She testified that the assailant was George Carns, the defendant; that in the struggle she had pulled the mask partly from his face and saw him clearly.

Two police officers, who responded to a call from the area, testified as to picking up Pearl Anderson while she was running down a street, bleeding, hysterical and clad only in a nightgown. These two officers testified that Pearl Anderson told them that George Carns, the defendant, was her assailant.

Another police officer testified as to the condition of the residence and the beaten condition of Pearl Anderson. Her doctor testified as to her wounds.

The facts of an assault were clearly and unequivocally demonstrated. But, the identity of the assailant was testified to only by the complaining witness. No other facts or circumstances were shown to connect Carns with the commission of the offense except the identification by Pearl Anderson. However, certain relationships between the complaining witness and the defendant were brought out. The complaining witness, a young widow, was engaged to the ex-husband of the defendant's girl friend.

The defendant's case consisted of the defendant's testimony, borne out by the girl friend, and in part by the girl friend's mother, that he was not present at the scene of the crime, but had in fact spent the night with the girl friend in her apartment. An alibi. The defendant admitted a prior felony conviction. He was arrested Monday night, two days after the crime.

The entire defense, other than that above, consisted of an attempt to attack the complaining witness' identification of her assailant.

The appellant alleges twenty-three specifications of error. Specifications Nos. 22 and 23 are concerned with the information, but we do not deem them meritorious. The balance of the specifications go to two matters, the conduct of the trial and the instructions given.

As related before, the conviction was based solely upon the identification of the defendant by the complaining witness.

The specifications of error going to the conduct of the trial, which we deem worthy of discussion, are as follows:

Specification No. 1. The Court erred in refusing to permit the complaining witness Pearl Anderson to be recalled for further cross-examination and to permit her impeachment by testimony of the witness Betty Jane Larson.

Specification No. 13. The Court erred in sustaining objections to testimony sought to be elicited from the witness, Betty Jane Larson, as follows:

"Q. Now, at the time you were with Mrs. Pearl Anderson at the hospital, or shortly thereafter, did she make any statement to the effect that the fellow that attacked her had black hair?

"Adams: To which we object on the grounds that the question is leading. Further grounds that it is irrelevant, immaterial, incompetent and no foundation has been laid as to the circumstances surrounding.

"Court: I don't recall any such question was asked for the complaining witness to which this would be rebuttal, or where it would be impeachment. * * *

"Court: Objection is sustained."

130

Specification No. 14. The Court erred in sustaining objection to questions and in striking the answer of the witness, Betty Jane Larson, given as follows:

"Q. Surely, Mrs. Larson, at times prior to July 19th can you tell the court whether or not you had any requests from Mrs. Anderson concerning calling Margie Marcenko's mother?

"Adams: To which we will object and move to strike the witness's answer for the purpose of objection. To which we will object on the grounds the question is leading, on the further grounds it is irrelevant, immaterial, incompetent, and no foundation was laid and it is beyond the scope and purpose of the material question presented here.

"Moe: Your Honor, I am trying to establish a motive on the part of the victim for framing the defendant, George Carns.

"Court: Well, on your objection I excluded certain evidence which was sought to be brought out by the plaintiff which this might be rebuttal. I—

"Q. I didn't quite get to finish the question, Your Honor. That is the problem. Can I finish the question, Your Honor?

"Court: All right.

"Q. Mrs. Larson, at times prior to July 19th of this year, did you—can you tell us whether or not you had any request from Mrs. Anderson to call Margie Marcenko's mother and tell her bad things about George Carns?  A. Yes.

"Adams: To which we will object on the grounds that the question is leading and tends to be prejudicial, and the same objection proposed before to the same question.

"Court: I instructed you a while ago not to answer the question until it is completed.

"A. I am sorry. I didn't hear you, Your Honor.

"Court: Well, my voice is clearer than that. All right, strike out the answer.

"Adams: Renew my objections, Your Honor, on the grounds that the question is leading, and the question has already been ruled upon by the court in the previously asked question. It is

also prejudicial, and no foundation has been laid for this type of examination.

"Court: Sustained."

Specification No. 15. The Court erred in denying the motion of the defendant to reopen the State's case for the cross-examination of Pearl Anderson, as shown by the record as follows:

"Moe: At this time your honor, I would like to move for leave to excuse this witness from the stand temporarily, and I move to reopen my cross-examination of the victim, Pearl Anderson. I have a showing to make, if the court desires it for that request, but I assume the court would like it outside the presence of the jury.

"Court: I will excuse the jury for 15 minutes. Jury admonished.

"Moe: Comes now the defendant and moves to recall the witness, Pearl Anderson, to the stand for the purpose of reopening her cross-examination, and examining her with regard to a certain statement made to the previous witness, Betty Larson, concerning her description of the alleged attacker, which involved a statement that the alleged attacker had black hair, which statement was purportedly made some time shortly after the attack in the presence of those two persons, and for the further purpose of examining the witness, Pearl Anderson, with regard to her request to the witness now on the stand to call Margie Marcenko's mother and tell her defamatory things about the defendant, George Carns. The witness, Betty Larson, contacted me last night after the close of the testimony of Pearl Anderson with reference to these subjects, and I had no opportunity or no knowledge of these facts until late yesterday evening. Accordingly, I had no chance to lay a foundation for impeachment, or to continue the cross-examination of these subjects upon the witness, Pearl Anderson.

"Court: Well, now, will you state for the record what you expect to prove by this witness?

"Moe: First of all, by this witness I expect to prove that the victim, Pearl Anderson, made a contradictory description of her

assailant which does not match the description of the alleged assailant, that is the defendant, in that the color of hair is quite different; that that description to the credibility of the witness, Pearl Anderson, with regard to the portion concerning the request of Pearl Anderson to have the witness now on the stand make a telephone call or calls to Mrs. Eggebrecht, I expect to prove the lack of credibility of the witness, Pearl Anderson, by showing her bias and prejudice, and further showing a motive for naming the defendant as her attacker, rather than the person whom it really was. * * *

"Court, Well, Mr. Moe, as I understand you, you first learned of the testimony that you now seek to elicit from Mrs. Larson last evening, is that right?

"Moe: That is correct. About 5.30 after I returned from the courtroom here.

"Court: So at all times this morning up to the time the State closed their case, you were aware of the statements that could be made by Mrs. Larson?

"Moe: That is correct, Your Honor, approximately the statements, yes.

"Court: And you will concede, I take it, that at no time prior to the closing of the State's case, or at any time up to the time of the ruling of the court, did you ask for privilege of recalling Mrs. Anderson for the purpose of cross-examination?

"Moe: I did not at that time. I expected that the State would call Mrs. Larson as a witness on their own behalf, inasmuch as they have sent her a subpoena, and she advised me at 5:30 p. m. over the phone last night that she had expected to testify this morning as a witness for the State, and when the State closed without putting her on as a witness, I was in the position that I am in now.

"Adams: Your Honor, I would also like to interpose something here in respect to this matter, and that pertains to the matter of Mrs. Larson's testimony. I have reason to believe that Mrs. Larson may be angry with Mrs. Anderson. There is some reason to believe that. I also might call the court's attention to

the fact that the witness, Mrs. Larson, has set throughout this case in this courtroom when the motion of defense counsel was granted to exclude all witnesses, and therefore we feel that having heard all of the testimony, she is in a position to carry out this prejudicial anger, if there is prejudice here. We also believe that the defense counsel interposed objection in the plaintiff's case in chief pertaining to this same matter, and that objection was sustained, and the State itself was not permitted to explore on it in the manner in which they would have liked to explore. Therefore, we feel that to permit him now to come in and explore it is to place the State in the position of appearing to conceal or hide certain facts which we cannot see the materiality of, and the one statement, the color of hair, it is not established that Mrs. Anderson cannot be color blind.

''Court: Well, do you take the position that it is necessary for you to recall Mrs. Anderson to the stand in order to lay a foundation for the rebuttal which you expect to offer?

''Moe: That's part of my position, Your Honor, and then I propose, as I have mentioned in my statement heretofore given, that I would propose to question her about her motives and her purposes with regard to her requests concerning the telephone calls that she asked Mrs. Larson to make for the purposes of attacking her credibility as being biased and prejudiced.

''Court: Those are all matters which could have been gone into on your cross-examination while the witness was on the stand. I do not believe that you have a right to recall a witness for further cross-examination after the State has closed their case, for the sole purpose of laying a foundation so that you can offer rebuttal to the testimony which you hope to bring out by cross-examination.

''Moe: If it please the court, I would be happy to go under oath at this time to place in the record my statement under oath as to the time that I received the information. In that connection, I have here—

''Court: I grant you that. But that according to your own statement at 5:30 last evening, and the State did not close their

case until sometime this morning, and you had the opportunity to ask to recall Mrs. Anderson for further cross-examination before they closed their case, and if you had made that request, why it undoubtedly would have been granted.

"Moe: At that time, Your Honor, I, of course, could not anticipate that the court would sustain objections to the questions which were asked to the witness. Perhaps I should have, but I did not anticipate that the court would sustain these objections, and that was the reason for not making my request at the time the court mentions.

"Court: The motion will be denied."

Specification No. 2. The Court erred in sustaining objections to questions propounded to the witness, Pearl Anderson, as follows:

"Q. Mrs. Anderson, in getting back to the time just after you ran out of your house on July 19th and the time when you were stopped and taken care of by these police officers, did you tell any of them who it was that assaulted you?

"Adams: To which we object as being irrevelant and immaterial beyond the scope of the direct examination.

"Court: Sustained.

"Q. Mrs. Anderson, on the morning, the early morning of the 19th of July, did you ever describe to the police the party that attacked you?

"Adams: To which we object as being irrelevant, immaterial and incompetent to the same question.

"Court: The objection is sustained on the ground that it is not proper cross-examination, not having been gone into on direct."

Specification No. 4. The Court erred in refusing defendant's offer of proof No. 1, as follows:

"Mr. Moe: Comes now the defendant and offers to prove by the witness now on the stand that if she was permitted to answer the question that she would testify that she either named or described the alleged assailant at the time shortly after the alleged assault."

Taking up the latter two specifications, numbers 2 and 4 first. It will be seen that the trial court sustained objections to questions to Pearl Anderson as to whether she had told police officers who had assaulted her and also as to whether she had described her assailant. The objections were based on the ground that such questions were beyond the scope of the direct examination. On direct examination, Pearl Anderson had testified as to the circumstances and occurrences of the night assault. The statements of the assailant were testified to. The fact that she was with the police was testified to. The identity of the assailant was testified to and his wearing apparel described. Most certainly the identity of the assailant was a proper matter for cross-examination and a matter most vital and relevant. Her statements to the police, if there were any, would be most relevant to the matters she testified to, and, if made shortly after the assault, would be most likely true, she having at that time no possible reason to make false statements. We, of course, can only speculate what her answers might have been, but, to the offers of proof set out above, the prosecuting attorney objected as follows:

"Adams: State will resist the offer of proof on the grounds it is irrelevant, immaterial and incompetent and beyond the scope of direct examination, and on the further reason that it is not established that the mental or physical condition of the witness was comparable to the situation now existing, and no foundation has been laid."

What was there to hide? Was her identification of her assailant clear and positive? Could not it stand scrutiny?

R.C.M. 1947, sec. 93-1901-7, provides:

"The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith, and in so doing may put leading questions  *  *  *."

Under this section, were matters pertaining to identity and the immediate circumstances of the assault "connected therewith" as to facts stated in the direct examination? We think

yes under the circumstances of this case; it being a criminal case involving a man's liberty.

In Kipp v. Silverman, 25 Mont. 296, 306, 64 Pac. 884, 888, ▇ Chief Justice Brantly observed that "the statute (Code of Civil Procedure, sec. 3376 [now R.C.M. 1947, sec. 93-1901-7 above]) permits a wide range for cross-examination, and the courts should incline to extend, rather than to restrict, the right. Properly understood, the right extends, not only to all facts stated by the witness in his original examination, but to all other facts connected with them, whether directly or indirectly, which tend to enlighten the jury upon the question in controversy."

Also see State v. Howard, 30 Mont. 518, 527, 77 Pac. 50; State v. Whitworth, 47 Mont. 424, 431, 133 Pac. 364, State v. McKnight, 129 Mont. 8, 19-21, 281 Pac. (2d) 816.

We are aware of the rule cited by the State in Spurgeon v. Imperial Elevator Co., 99 Mont. 432, 43 Pac. (2d) 891; Vonault v. O'Rourke, 97 Mont. 92, 33 Pac. (2d) 535, to the effect that cross-examination was not proper as to conversations not testified to on direct. But, there is a difference here, in addition to the fact that it is a criminal case; that is, that the prosecuting witness testified flatly as to the identity of her assailant. It was not the conversation that was important, but rather the identification. That was a matter connected with her direct examination as to identity.

We are also aware of the rule that the latitude of the cross-▇ examination is in the discretion of the trial court, and that we will not interfere unless there appears that there was a manifest abuse of discretion. State v. Biggs, 45 Mont. 400, 404, 123 Pac. 410.

The limitation on cross-examination was reversible error.

Going on now to specifications numbers 1, 13, 14 and 15. The entire case from its opening to the resting of the defense, including the selection of a jury, took less than a day and one half. From the record it appears that defense counsel learned of purported statements of the prosecuting witness, Pearl Anderson, to the effect that her assailant had black hair, and to the

effect that she had requested the baby sitter, Mrs. Larson, to say "bad things" about the defendant. Mrs. Larson was a witness endorsed on the information but was not called to testify for the State. Defendant's counsel learned of these statements after Pearl Anderson had completed testifying and the night before the State rested its case. The State rested its case approximately ten minutes after the trial had commenced the next morning. When the defense attempted to elicit these statements from Mrs. Larson, objections to the questions were sustained.

In specifications Nos. 13 and 14, heretofore set out, the court's action in sustaining the objection to the question to Mrs. Larson is shown. Both objections were sustained on the ground that no foundation had been laid. In specifications Nos. 1 and 15 the court's action refusing to allow the recall of Pearl Anderson so that a foundation might be made is shown.

First of all the evidence of the two statements were material ▉ and competent for two reasons. They would be impeaching and might show bias. Of course, a foundation would have to be made, and the court properly sustained objections to the questions for lack of proper foundation.

Did the court commit prejudicial error in refusing to allow the defendant to recall the prosecuting witness, after the State had rested, for the purpose of laying a foundation for her impeachment by prior inconsistent statements or by bias?

It is within the sound discretion of the trial court whether a ▉▉ witness who has been examined shall be recalled for further examination. R.C.M. 1947, sec. 93-1901-10; State v. Mumford, 69 Mont. 424, 433, 222 Pac. 447. There must be shown an abuse of discretion before we will interfere. State v. Mumford, supra; 98 C.J.S. Witnesses, sec. 489, p. 383.

The trial judge stated that had defense counsel moved to recall Pearl Anderson before the State rested (i. e., within the first ten minutes after trial began the second and last day) then it would have been granted. But, it would not grant the motion an hour or so later. We think where, as here, a conviction must be had on the sole identification of the defendant by the prose-

cuting witness that such a refusal is an abuse of discretion. The credibility and possible bias of that witness was of utmost relevancy.

A recent Florida case states the matter existing here quite well. In Hahn v. State, Fla. 1952, 58 So. (2d) 188 at page 191, it is said: "This Court has always recognized that a trial Court has wide latitude in regulating the conduct of trials in order that the administration of justice be speedily and fairly achieved in an orderly, dignified manner and befitting the gravity of the business in hand. In this function the trial Judge exercises the sound discretion with which he is vested. This discretion may be invoked and its exercise reasonably required for many reasons. It may be invoked when counsel in the stress of the trial overlooks or fails to offer proof of material matter or otherwise fails in his duty to his client in the conduct of his case. In a grave case, as here, where defendant's life was in jeopardy his [attorney's] ineptitude alone is enough. This discretion wisely used to the end that the justice of the cause be achieved should none the less impair the Judge's control of the proceedings of the trial. We have held that the right to recall witnesses to lay the predicate for impeachment is not absolute but such right rests in the discretion of the trial Court. [Citing cases.] * * *

"We hold that the trial Court should have exercised its discretion and permitted the recall of Kimbrough on the request of defense counsel for the purpose of examining him to lay a predicate for impeachment as requested."

Here the defense counsel did not know of the alleged statements when he cross-examined Pearl Anderson. It is true that he did know them before the State closed its case, but where a conviction hangs on identification with no attendant circumstances, the ineptness or inadvertence of defense counsel should not defeat an attempt to get everything before the jury.

We find that the refusal to allow recall of the complaining witness for further cross-examination under these circumstances was an abuse of discretion. We are not to be construed as condemning all matters and rulings referred to in the foregoing

specifications of error. They are set forth and discussed so that the ruling against recall of the prosecuting witness for further cross-examination might be viewed in the perspective of the prior restrictions on cross-examination. Other similar close technical rulings on objections might be recited.

Since the cause must go back for a new trial, we shall discuss ▮ certain instructions to the jury.

Instruction No. 14 was given as follows:

"The Court instructs the jury, as a matter of law, that where two witnesses testify directly opposite to each other on a material point, and are the only ones that testify directly to the same point, you are not bound to consider the evidence evenly balanced, or the point not proved; you may regard all the surrounding facts and circumstances proved on the trial and give credence to one witness over the other if you think such facts and circumstances warrant it."

In three previous cases this court has condemned the above instruction in a criminal case. State v. Jones, 48 Mont. 505, 139 Pac. 441; State v. Darchuck, 117 Mont. 15, 156 Pac. (2d) 173; State v. Hay, 120 Mont. 573, 194 Pac. (2d) 232. The objection is that it allows the jury to weigh the evidence under the rule applicable to civil cases, and having so weighed it and ascertained on which side the scale *preponderated,* to decide the case accordingly. Even though the jury is instructed that the defendant cannot be convicted unless the charges are proved beyond a reasonable doubt, this instruction tends to confuse the jury, and, where, as in this case the two witnesses testifying opposite to each other on the point of identity are the defendant and Pearl Anderson, the instruction tends to lead the jury to believe that the charge is proven beyond a reasonable doubt merely because the defendant's testimony is preponderated by that of Pearl Anderson.

The State contends that this error is not grounds for reversal because no substantial rights were prejudiced. But we think this is precisely one type of case where this instruction will create the most prejudice and do the most damage to the re-

quirement that the State's case must be proved beyond a reasonable doubt. As before emphasized the entire proof depends upon the word of one state's witness as to identity with no other evidence at all sufficient to sustain the charge.

The State's argument by analogy to the effect that since the ■ fact that defendant is the defendant and the nature of the crime may be taken into consideration by the jury, and that these matters do not defeat the presumption of innocence, and therefore this instruction is likewise nonprejudicial does not impress us. The defendant must be found guilty beyond a reasonable doubt, and to permit the jury to convict with less evidence, or to confuse them into thinking they can do so, is error.

Instruction No. 28 was given as follows:

"A witness is presumed to speak the truth. This presumption, ■ however, may be repelled by the manner in which he or she testifies, by the character of his or her testimony, or his or her motives, or by contradictory evidence, and the jury are the exclusive judges of his credibility.

"If you believe from all of the evidence in the case, that any witness who has testified in this case, has wilfully and deliberately testified falsely to any fact or matter material to this issue involved herein, then you will be at liberty to disregard the entire testimony of any such witness, *except insofar as it may be corroborated by other and credible evidence in the case.*" Emphasis supplied.

No objection was made to the instruction, but on retrial the court should not write in an unauthorized exception as italicized above. See State v. Belland, 59 Mont. 540, 549, 197 Pac. 841; State v. Hogan, 100 Mont. 434, 436, 49 Pac. (2d) 446.

For the reasons herein stated the judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY and ANGSTMAN, concur.

MR. JUSTICE ADAIR, dissenting:

A careful reading of the record herein has failed to disclose

any prejudicial error committed against the defendant George Carns or that indicates that such defendant was not accorded a fair and impartial trial. There being ample evidence, if believed, to sustain the jury's verdict, in my opinion the judgment of conviction, entered pursuant to such verdict, should be affirmed.